## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

SONIA LOPEZ-MCNEAR, individually and
on behalf of all others similarly situated,

                    *Plaintiff*,

     v.

SUPERIOR HEALTH LINENS, LLC, a
Wisconsin limited liability company,

                    *Defendant*.

Case No.: 1:19-cv-2390

Hon. Rebecca R. Pallmeyer

## PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND..........................................3

        A.      Illinois' Biometric Information Privacy Act........................................3

        B.      Plaintiff's Allegations and Defendant's Handprint
                Scanning System..................................................................................5

        C.      Litigation, Negotiation, and Settlement...............................................5

III.    TERMS OF THE SETTLEMENT AGREEMENT ...........................................7

        A.      Class Definition ....................................................................................7

        B.      Settlement Payments .............................................................................8

        C.      Prospective Relief ................................................................................9

        D.      Release of Liability ..............................................................................9

        E.      Payment of Settlement Notice and Administrative Costs ...................9

        F.      Payment of Attorneys' Fees, Costs, and Incentive Award...............10

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
        SETTLEMENT PURPOSES............................................................................10

        A.      The Numerosity Requirement is Satisfied.........................................11

        B.      Common Issues of Fact and Law Predominate .................................11

        C.      The Typicality Requirement is Satisfied ...........................................13

        D.      The Adequacy Requirement is Satisfied............................................14

        E.      A Class Action Is a Superior Method of Resolving the Controversy............17

        F.      The Class Is Ascertainable.................................................................19

V.      PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL....20

VI.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL..21

A.    Plaintiff Lopez-McNear and Proposed Class Counsel Have Adequately Represented the Settlement Class ...................................................23

B.    The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties ............................................................28

C.    The Settlement Treats All Settlement Class Members Equally .....................29

D.    The Relief Secured for the Settlement Class Is Adequate and Warrants Approval .......................................................................30

      1.    The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval ...........................30

      2.    The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval ........................32

      3.    The terms of the requested attorneys' fees are reasonable ................33

VII.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE ....................................................................35

VIII.   CONCLUSION ..........................................................................36

# **TABLE OF AUTHORITIES**

## **United States Supreme Court Cases**

*Amchem Prods. Inc. v. Windsor,*
      521 U.S. 591 (1997) ..................................................................................... 10, 11

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds,*
      568 U.S. 455 (2013) ......................................................................................... 10

*Eisen v. Carlisle & Jacquelin,*
      417 U.S. 156 (1974) ......................................................................................... 35

*Frank v. Gaos,*
      139 S. Ct. 1041 (2019) ..................................................................................... 26

*Ortiz v. Fibreboard Corp.,*
      527 U.S. 815 (1999) ......................................................................................... 29

*Wal-Mart v. Dukes,*
      564 U.S. 338 (2011) ......................................................................................... 12

## **United States Circuit Court of Appeals Cases**

*Arreola v. Godinez,*
      546 F.3d 788 (7th Cir. 2008) ........................................................................... 10

*Beaton v. SpeedyPC Software,*
      907 F.3d 1018 (7th Cir. 2018) ......................................................................... 13

*Bell v. PNC Bank, Nat'l Ass'n,*
      800 F.3d 360 (7th Cir. 2015) ........................................................................... 11

*Gautreaux v. Pierce,*
      690 F.2d 616 (7th Cir. 1982) ..................................................................... 21, 22

*Gomez v. St. Vincent Health, Inc.,*
      649 F.3d 583 (7th Cir. 2011) ........................................................................... 21

*Isby v. Bayh,*
      75 F.3d 1191 (7th Cir. 1996) ........................................................................... 22

*Lane v. Facebook, Inc.,*
      696 F.3d 811 (9th Cir. 2012) ..................................................................... 25, 26

*Miller v. Sw. Airlines Co.*,
    926 F.3d 898 (7th Cir. 2019) ................................................................................8

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ...............................................................11, 19, 20

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) .............................................................................15

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ..............................................................................13

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ..............................................................................12

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ..............................................................................22

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ..............................................................................34

## United States District Court Cases

*Adkins v. Facebook, Inc.*,
    No. 18-cv-05982-WHA (N.D. Cal. Nov. 15, 2020) ............................................1

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011)............................24

*Barnes v. Air Line Pilots Ass'n, Int'l*,
    310 F.R.D. 551 (N.D. Ill. 2015) ...................................................................11, 18

*Bayat v. Bank of the West*,
    No. 13-cv-2376, 2015 WL 1744342 (N.D. Cal. 2015).....................................25

*Bernal v. NRA Grp. LLC*,
    318 F.R.D. 64 (N.D. Ill. 2016) .....................................................................18, 19

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
    No. 18-cv-07018 (N.D. Ill. Sept. 10, 2020)................................................33, 34

*Fernandez v. Kerry, Inc.*,
    No. 17-CV-08971, 2020 WL 7027587 (N.D. Ill. Nov. 30, 2020) ......................8

*Goldsmith v. Tech. Sols. Co.*,
    No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)..........................30

*Gumm v. Ford*,
No. 5:15-cv-41-MTT, 2019 WL 479506 (M.D. GA 2019)................................23

*Hale v. State Farm Mut. Auto. Ins. Co.*,
No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ....................22

*Hudson v. Libre Technology, Inc.*,
No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. CA 2020) ................32

*In re AT & T Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................32

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ................................................................22, 25

*In re Facebook Biometric Info. Privacy Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) ..............................................................18, 32

*In re Facebook Biometric Info. Privacy Litig.*,
No. 15-CV-03747-JD, 2020 WL 4818608 (N.D. Cal. Aug. 19, 2020) ......15, 16

*In re Google Buzz Privacy Litig.*,
No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. 2011)..............................26

*In re Google LLC Street View Elec. Commc'ns Litig.*,
No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ...........1

*In re Southwest Airlines Voucher Litig.*,
No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)........................30

*Jackson v. Nat'l Action Fin. Servs., Inc.*,
227 F.R.D. 284 (N.D. Ill. 2005) ......................................................................18

*Jones v. CBC Rest. Corp.*,
19-cv-06736 (N.D. Ill. Oct. 22, 2020) ......................................................26, 27

*Kaufman v. Am. Express Travel Related Servs., Co.*,
No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016) .........................25

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ......................................................................24

*Martinez v. Nando's Rest. Grp., Inc.*,
19-cv-07012 (N.D. Ill. Oct. 27, 2020) ......................................................2, 27

*Muir v. Nature's Bounty (DE), Inc.*,
    No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018)............................................13

*Osada v. Experian Info. Sols., Inc.*,
    290 F.R.D. 485 (N.D. Ill. 2012) .................................................................................14, 15

*Pichler v. UNITE*,
    775 F. Supp. 2d 754 (E.D. Pa. 2011).................................................................................30

*Pietrzycki v. Heights Tower Serv., Inc.*,
    197 F. Supp. 3d 1007 (N.D. Ill. 2016)..............................................................................17

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
    252 F.R.D. 438 (N.D. Ill. 2008) .......................................................................................15

*Ramirez v. GLK Foods, LLC*,
    No. 12-C-210, 2014 WL 2612065 (E.D. Wis. June 11, 2014)....................................18, 19

*Retired Chi. Police Ass'n v. City of Chi.*,
    7 F.3d 584 (7th Cir. 1993) ................................................................................................14

*Schulte v. Fifth Third Bank*,
    No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. 2010)......................................................29

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011)................................................................................32

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 C 8461, 2018 WL 4659274 (N.D. Ill. Sept. 28, 2018) ..........................................23

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019)......................................22, 28

*Starr v. Chi. Cut Steakhouse*,
    75 F. Supp. 3d 859 (N.D. Ill. 2014)..................................................................................14

*Toney v. Quality Res., Inc.*,
    323 F.R.D. 567 (N.D. Ill. 2018) .......................................................................................20

*Wright v. Nationstar Mortg. LLC*,
    No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016)........................................28

*Ziemack v. Centel Corp.*,
    163 F.R.D. 530 (N.D. Ill. 1995) .......................................................................................14

**Illinois Supreme Court Cases**

*Rosenbach v. Six Flags Ent. Corp.*,
  2019 IL 123186 ...................................................................................................4

**Illinois Appellate Court Cases**

*McDonald v. Symphony Bronzeville Park LLC*,
  2020 IL App (1st) 192398 ...........................................................................16, 31

*Rottner v. Palm Beach Tan, Inc.*,
  2019 IL App (1st) 180691-U ................................................................................16

*Sekura v. Krishna Schaumburg Tan, Inc.*,
  2018 IL App (1st) 180175....................................................................................16

*Tims v. Black Horse Carriers, Inc.*,
  No. 1-20-0563 ......................................................................................................31

**Illinois Circuit Court Cases**

*Barnes v. Aryzta*,
  2017-CH-11312 (Cir. Ct. Cook Cty. Nov. 13, 2020) ..........................................34

*Carroll v. Crème de la Crème, Inc.*,
  2017-CH-01624 .................................................................................................1, 26

*Dixon v. Grunt Style LLC*,
  2019-CH-01891 (Cir. Ct. Cook Cty.)...................................................................27

*Edmond v. DPI Specialty Foods*,
  2018-CH-09573 (Cir. Ct. Cook Cty.) ..............................................................2, 27

*George v. Schulte Hosp.Grp., Inc., et al.*,
  No. 2018-CH-04413 .............................................................................................27

*Johnson v. Rest Haven Illiana Christian*,
  2019-CH-01813 (Cir. Ct. Cook Cty.)...................................................................27

*Licata v. Facebook, Inc.*,
  2015-CH-05427 (Cir. Ct. Cook Cty. Apr. 1, 2015)..............................................15

*Lloyd v. Xanitos*,
  2018-CH-15351 (Cir. Ct. Cook Cty. Jul. 25, 2019) ............................................34

*Marshall v. Lifetime Fitness, Inc.*,
  2017-CH-14262 (Cir. Ct. Cook Cty.) .......................................................................... 2, 26

*McGee v. LSC Commc'ns*,
  2017-CH-12818 (Cir. Ct. Cook Cty.) .............................................................................. 26

*Sekura v. L.A. Tan Enterprises, Inc.*,
  2015-CH-16694 (Cir. Ct. Cook Cty.) ......................................................................... 16, 34

*Svagdis v. Alro Steel Corp.*,
  No. 2017-CH-12566 (Cir. Ct. Cook Cty.) ....................................................................... 34

*Watts v. Aurora Chicago Lakeshore Hosp. LLC.*,
  2017-CH-12756 (Cir. Ct. Cook Cty.) ........................................................................... 2, 27

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
  2018-CH-02140 (Cir. Ct. Cook Cty.) .............................................................................. 34

## **Miscellaneous Authority**

29 U.S.C. § 141 ........................................................................................................................ 8

740 ILCS 14 ..................................................................................................................... *passim*

820 ILCS 305 ........................................................................................................................ 31

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
  Law360 (October 5, 2017), https://edelson.com/wp-content/uploads/2016/05/Illinois-
  Powerhouse-Edelson-PC.pdf ........................................................................................ 16

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
  Law360 (Aug. 28, 2018), https://www.law360.com/articles/1076447/illinois-
  powerhouse-edelson-pc ................................................................................................ 16

Fed. R. Civ. Proc. 23 ........................................................................................................ *passim*

Ill. House Transcript, 2008 Reg. Sess. No. 276 ...................................................................... 3

Grace Dixon Hanson, *Class Action Group Of The Year: Edelson*,
  Law360 (Dec. 3, 2020), https://www.law360.com/articles/1328395/class-action-group-
  of-the-year-edelson ....................................................................................................... 16

Joyce Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*,
  Law360 (Dec. 8, 2020), https://www.law360.com/articles/1327009/cybersecurity-
  privacy-group-of-the-year-edelson ............................................................................... 16

Lauraann Wood, *Illinois Powerhouse: Edelson*,
LAW360 (Sept. 3, 2019), https://www.law360.com/articles/1193728/illinois-powerhouse-edelson ................................................................................................................16

*Law360 Names Practice Groups of the Year*,
LAW360 (Nov. 29, 2020), https://www.law360.com/articles/1327476/law360-names-practice-groups-of-the-year ................................................................................................16

Matt Marshall, *Pay By Touch In Trouble, Founder Filing For Bankruptcy*,
VENTURE BEAT, available at http://goo.gl/xT8HZW ............................................................3

Meg Marco, *Creepy Fingerprint Pay Processing Company Shuts Down*,
CONSUMERIST, available at https://goo.gl/rKJ8oP ............................................................3

NEWBERG ON CLASS ACTIONS,
§ 3:56 (5th ed.)................................................................................................................21

NEWBERG ON CLASS ACTIONS,
§ 4:72 (5th ed.)................................................................................................................19

NEWBERG ON CLASS ACTIONS,
§ 13:1 (5th ed.)................................................................................................................21

NEWBERG ON CLASS ACTIONS,
§ 13:53 (5th ed.)..............................................................................................................33

NEWBERG ON CLASS ACTIONS,
§ 15:83 (5th ed.)..............................................................................................................34

## I.       INTRODUCTION

Plaintiff Sonia Lopez-McNear ("Plaintiff") brought this class action lawsuit alleging that her employer, Defendant Superior Health Linens, LLC ("Defendant" or "SHL"), violated the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, by collecting employee handprints without providing the requisite disclosures or obtaining informed written consent. Following extensive written discovery, including third-party discovery and the review of thousands of pages of documents, the Parties have reached a class-wide settlement that provides excellent relief for the Settlement Class. SHL has agreed to create a non-reversionary Settlement Fund of $790,000, equaling $1,000 gross per Settlement Class Member.[1]

Compared against other privacy cases, this Settlement provides both an exceptional amount of monetary relief to Class Members and does so with a unique, equitable process: Class Members will get a check in the mail with no need to file a claim. Many privacy cases have historically been settled for very little meaningful monetary relief, if any is provided to the class at all, which is a trend that unfortunately continues. *E.g.*, *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkt. 314 (N.D. Cal. Nov. 15, 2020) (preliminary approval settlement for injunctive relief only, in class action arising out of Facebook data breach). This has been the case in BIPA, too. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cty. June 6, 2018) (providing only credit monitoring). Others BIPA

---

[1]       Unless otherwise specified, all capitalized terms are defined in the Class Action Settlement Agreement (the "Agreement" or "Settlement"), which is attached hereto as Exhibit 1.

settlements have required class members to make claims in order to receive relief that are capped at a certain amount, with the inevitable remaining settlement funds reverting to the defendant. *E.g.*, *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty.) ($270 per claimant with credit monitoring, reverting funds to defendant).

In the leading settlements in the employment context, however, the settlement secures significant monetary relief sent directly to the class—with no need for a claims process. *E.g.*, *Martinez v. Nando's Rest. Grp., Inc.*, 19-cv-07012 (N.D. Ill. Oct. 27, 2020) (fund constituting $1,000 per person with direct checks sent to all class members); *Edmond v. DPI Specialty Foods*, 2018-CH-09573 (Cir. Ct. Cook Cty.) (fund constituting $1,000 per person with direct checks sent to all class members for $604.65 after fees and costs); *Watts v. Aurora Chicago Lakeshore Hosp. LLC*, 2017-CH-12756 (Cir. Ct. Cook Cty.) (fund constituting $1,000 per person with direct checks sent to all class members for $612.13 after fees and costs). This Settlement is a strong example of the last category: SHL has agreed to pay $1,000 per Settlement Class Member into a non-reversionary Settlement Fund. After fees and costs are paid, the Settlement Fund will be distributed *pro rata* directly to the Class Members via mailed checks for approximately $620 each.

Given the relief proposed by the Settlement Agreement, along with its equitable and transparent distribution, the Court should not hesitate to find that the Settlement is well within the range of possible approval. Accordingly, Plaintiff respectfully requests that the Court certify the proposed Settlement Class, appoint her attorneys as Class Counsel, grant her motion for preliminary approval in its entirety, direct that Notice be disseminated to the Settlement Class, and set a Final Approval Hearing.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Illinois' Biometric Information Privacy Act

A brief history and overview of BIPA gives further context to the reasonableness of the proposed Settlement. In the early 2000s, a company called Pay By Touch began installing fingerprint-based checkout terminals at grocery stores and gas stations in major retailers throughout the State of Illinois to facilitate consumer transactions. (Class Action Complaint, ("Compl."), ¶¶ 12–13.) The premise was simple: swipe your credit card and let the machine scan your index finger, and the next time you buy groceries or gas, you won't need to bring your wallet—you'll just need to provide your fingerprint. But by the end of 2007, Pay By Touch had filed for bankruptcy. (*Id.* ¶ 13.) When Solidus, Pay By Touch's parent company, began shopping its database of Illinois consumers' fingerprints as an asset to its creditors, a public outcry erupted.[2] Though the bankruptcy court eventually ordered Pay By Touch to destroy its database of fingerprints (and their ties to credit card numbers), the Illinois Legislature took note of the grave dangers posed by the irresponsible collection and storage of biometric data without any protections. *See* Ill. House Transcript, 2008 Reg. Sess. No. 276.

Recognizing the "very serious need" to protect Illinois citizens' biometric data—which includes retina scans, fingerprints, voiceprints, and scans of hand or face geometry—the Illinois legislature unanimously passed BIPA in 2008 to provide individuals recourse when companies fail to appropriately handle their biometric data in accordance with the statute. (*See* Compl. ¶ 14; 740 ILCS 14/5.) Thus, BIPA makes it unlawful for any private entity to "collect, capture,

---

[2]     *See*, *e.g.*, Meg Marco, *Creepy Fingerprint Pay Processing Company Shuts Down*, CONSUMERIST, available at https://goo.gl/rKJ8oP (last accessed Dec. 21, 2020); Matt Marshall, *Pay By Touch In Trouble, Founder Filing For Bankruptcy*, VENTURE BEAT, available at http://goo.gl/xT8HZW (last accessed Dec. 21, 2020).

purchase, receive through trade, or otherwise obtain a person's or a customer's biometric

identifier or biometric information, unless it first:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ."

740 ILCS 14/15(b). BIPA also establishes standards for how companies must handle Illinois

consumers' biometric data. For example, BIPA requires companies to develop and comply with

a written policy establishing a retention schedule and guidelines for permanently destroying

biometric data. 740 ILCS 14/15(a). To enforce the statute, BIPA provides a civil private right of

action and allows for the recovery of statutory damages in the amount of $1,000 for negligent

violations—or $5,000 for willful violations—plus costs and reasonable attorneys' fees. *See* 740

ILCS 14/20.

As the Illinois Supreme Court assessed the legislature's intent in passing BIPA, the

statute

> vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. . . . These procedural protections are particularly crucial in our digital world because technology now permits the wholesale collection and storage of an individual's unique biometric identifiers—identifiers that cannot be changed if compromised or misused. When a private entity fails to adhere to the statutory procedures . . . the right of the individual to maintain [his or] her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized. This is no mere technicality. The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 34 (internal citations and quotations

omitted).

### B.     Plaintiff's Allegations and Defendant's Handprint Scanning System

Plaintiff claims that SHL used a biometric timekeeping system to regulate and monitor its employees' working hours. (Compl. ¶ 23.) She alleges that when she first began working for SHL, the company required her—and all other new employees—to scan her hand to enroll her in SHL's employee handprint database, and subsequently use her hand in order to "punch" into or out of work. (*Id.* ¶¶ 22–23, 29–30.) Although SHL reaps a benefit from the decrease in "buddy punching" (one employee clocking in, or out, for another), Plaintiff alleges that SHL failed to comply with any one of BIPA's requirements when SHL collected her handprint data. (*Id.* ¶¶ 31–33.) Specifically, she alleges that SHL violated section 15(a) of BIPA by (i) failing to develop a data-retention policy and guidelines for permanently destroying biometric data, (ii) failing to publicly disclose any such policy, and (iii) failing to comply with any such policy. (*Id.* ¶¶ 25, 32, 43–44, 51–52.) Plaintiff further alleges that SHL violated section 15(b) of BIPA by collecting, using, and storing its employees' biometric data without obtaining written informed consent. (*Id.* ¶¶ 24, 29–33, 42, 44, 48–50, 52.) Defendant, for its part, denies that it has engaged in any wrongdoing. (*See* Def.'s Am. Ans., dkt. 41.)

### C.     Litigation, Negotiation, and Settlement

On February 28, 2019, Plaintiff Lopez-McNear filed this lawsuit in the Circuit Court of Cook County seeking redress on behalf of herself and a putative class of employees for SHL's alleged BIPA violations. After Defendant removed the case to this Court, the Parties began exploring the possibility of early resolution and jointly moved to stay the case pending their July 22, 2019 mediation session with the Honorable Eileen M. Brewer (Ret.) at JAMS in Chicago. (*See* dkt. 17.) Prior to the mediation, SHL provided Plaintiff's counsel with financial information

and potentially relevant insurance policies for purposes of settlement negotiations. The Parties, however, were not able to reach a resolution at the mediation.

The Court then lifted the stay, Defendant answered the Complaint (dkt. 28), and the Parties began to engage in written discovery. Plaintiff served her initial disclosures pursuant to the Mandatory Initial Discovery Pilot ("MIDP") on September 30, 2019, and Defendant served its MIDP disclosures on October 4, 2019, producing over 7,000 pages of documents to Plaintiff. (Declaration of Schuyler Ufkes ("Ufkes Decl."), attached hereto as Exhibit 2, at ¶ 3.) Defendant then responded to Plaintiff's first set of interrogatories and requests for production on October 24, 2019, producing another 2,100 pages of documents. (*Id.*) On February 5, 2020, Plaintiff served a third-party subpoena to ADP, LLC—the manufacturer of the alleged biometric timeclock at issue—and ADP responded to it on March 6, 2020. (*Id.*) Plaintiff then served her second set of discovery requests to Defendant on August 28, 2020, to which Defendant responded on October 9, 2020, producing even more documents. (*Id.*)

With written discovery largely complete, the Parties started coordinating oral discovery. Plaintiff noticed the depositions of Defendant's IT consultant and its Rule 30(b)(6) representative, which were scheduled to take place on October 30, 2020 and November 6, 2020, respectively, and Defendant noticed Plaintiff's deposition to take place on November 17, 2020. (*Id.* ¶ 4.) Plaintiff also served a subpoena for the deposition of ADP, which was set to take place in mid-November. (*Id.*)

Meanwhile, starting in early September, the Parties began to revisit the potential for a class-wide settlement and exchanged further informal discovery related to the size and composition of the putative class. (*Id.* ¶ 6.) As part of these discussions, Plaintiff's counsel reviewed SHL's financial information, and SHL demonstrated considerable financial strain that

was material to settlement negotiations. After considerable arm's-length negotiations, and on the eve of the first-scheduled deposition of Defendant's IT consultant, the Parties reached an agreement on the principal terms of the Settlement on October 29, 2020. (*Id.*) The Parties then prepared and negotiated the final terms of the settlement over the next six weeks, resulting in the final executed Settlement Agreement now before the Court. (*Id.*)

## III.     TERMS OF THE SETTLEMENT AGREEEMENT

The terms of the Settlement are set forth in the Class Action Settlement Agreement and are briefly summarized here:

### A.     Class Definition

The Settlement Class includes all current and former employees (including temporary employees provided by staffing services) of Superior Health Linens, LLC, who used a hand scanning timeclock at a facility owned or operated by Superior Health Linens, LLC in the State of Illinois between February 28, 2014 and the date of Preliminary Approval. (Agreement § 1.23.) Excluded from the Settlement Class are (a) persons who were or are in the bargaining units of any union, including the Chicago and Midwest Regional Joint Board, Workers United an SEIU affiliate, while working at Superior Health Linens, LLC; (b) persons who executed a settlement agreement and release with Superior Health Linens, LLC releasing and/or waiving their BIPA claims; (c) any Judge or Magistrate presiding over this action and members of their families; (d) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest; (e) persons who properly execute and file a timely request for exclusion from the Settlement Class; and (f) the legal representatives, successors, heirs or assignees of any such excluded persons. (*Id.*)

Union members are excluded from the Settlement Class given the uncertainty surrounding the preemption of BIPA claims by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, *et seq.*, and the possibility that such claims would need to be resolved through the grievance and arbitration procedures set forth in the collective bargaining agreement between SHL and the unions. *See Miller v. Sw. Airlines Co.*, 926 F.3d 898, 903 (7th Cir. 2019); *e.g.*, *Fernandez v. Kerry, Inc.*, No. 17-CV-08971, 2020 WL 7027587, at *4–5 (N.D. Ill. Nov. 30, 2020) (holding that the LMRA preempts plaintiffs' BIPA claims). In any event, these union members retain any BIPA claims they may have. Individuals who signed a settlement agreement, or written release with SHL releasing or waiving their BIPA claims are similarly excluded from the Settlement Class, because they have likely already released their BIPA claims against SHL.

## B.    Settlement Payments

The Settlement provides that Defendant will satisfy its monetary obligations by sending checks directly to Settlement Class Members, without the need for submitting a claim form. (Agreement § 2.1.) Defendant has agreed to pay $1,000 per member of the Settlement Class into the Settlement Fund; based on Defendant's confirmation that there are 790 members of the Settlement Class, Defendant is required to contribute $790,000 to the Settlement Fund. (*Id.* § 1.25.) In the event any person on the Class List excludes themselves from the Settlement (*i.e.*, "opts-out"), the Settlement Administrator will refund Defendant $1,000 for each such excluded person, since Defendant will not receive a release for those individuals who may later sue Defendant on their own for the claims asserted here. (*Id.* §§ 1.25, 2.1(d), 4.4.) After payment of Settlement Administration Expenses, costs, attorneys' fees, and any incentive award, each Settlement Class Member is estimated to receive a check for approximately $620. (Ufkes Decl. ¶

8

9.) If any checks remain uncashed within ninety (90) days after the date of issuance, the check will be void, and such funds will be distributed to the Electronic Privacy Information Center ("EPIC") and Legal Aid Chicago, earmarked to support the Workers' Rights Practice Group, as *cy pres* recipients, subject to Court approval. (Agreement § 2.1(c).)

### C. Prospective Relief

Defendant has represented (and the documents produced in discovery support) that SHL ceased using hand scanning timeclocks at each of its Illinois facilities in March of 2019—no doubt a result of Plaintiff filing this suit on February 28, 2019. Defendant agrees under the Settlement that should it ever revert to using a timekeeping system that collects and/or retains Illinois residents' biometric data, it shall implement policies and procedures to comply with BIPA, including by establishing a written publicly-available retention policy for collected biometric data, obtaining written releases from those employees, and making all BIPA-mandated disclosures. (Agreement § 2.2.) Defendant has further agreed to destroy all biometric data of its current and former employees within its possession. (*Id.*)

### D. Release of Liability

In exchange for the relief described above, the Settlement Class Members will release Defendant and its agents from any and all claims related to Plaintiff's allegations in the Action regarding Defendant's collection and possession of their biometric data through the use of hand scanning timeclocks at Defendant's Illinois facilities, including any violation of BIPA. (*Id.* §§ 1.18, 3.1.)

### E. Payment of Settlement Notice and Administrative Costs

Defendant has agreed to pay from the Settlement Fund all expenses incurred by the Settlement Administrator in, or relating to, administering the Settlement, providing Notice,

mailing checks, and any other related expenses. (Agreement § 1.21.)

### F. Payment of Attorneys' Fees, Costs, and Incentive Award

Defendant has agreed that Class Counsel is entitled to reasonable attorneys' fees in an amount to be determined by the Court by petition. (*Id.* § 8.1.) Proposed Class Counsel has agreed to limit its request for fees to 35% of the Settlement Fund, with no consideration from Defendant and no "clear-sailing agreement" so Defendant can challenge the amount requested if it desires. (*Id.*) Defendant has also agreed to pay Plaintiff an incentive award in the amount of $5,000 from the Settlement Fund, subject to Court approval, in recognition of her efforts as Class Representative. (*Id.* § 8.2.) Plaintiff will move for these payments via a separate request after Preliminary Approval.

### IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

Before the Court can preliminarily approve the proposed Settlement and direct notice to the Settlement Class, it must certify the class for settlement purposes, which requires a finding that the Court "will likely be able to certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). District courts are given broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

To merit certification, the Settlement Class must first satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, because the Settlement provides for monetary relief, the Settlement Class must also satisfy the requirements of Rule 23(b)(3): that (i) common questions of law or fact predominate over individual issues and (ii) a class action is the superior device to resolve the claims. *Amchem*,

521 U.S. at 615–16. Finally, a certified class must be ascertainable; that is, "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites and is ascertainable, and thus, should be certified for settlement purposes.

### A.    The Numerosity Requirement is Satisfied.

A class action may proceed when the proposed class is so numerous as to render joinder impractical. Fed R. Civ. P. 23(a)(1). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (citing collected Seventh Circuit cases). While there is no magic number at which joinder becomes unmanageable, courts have typically found that numerosity is satisfied when the class comprises forty (40) or more people. *See*, *e.g.*, *id.* (certifying class of 120 members). Here, the proposed Settlement Class is sufficiently numerous, as Defendant has confirmed by declaration that 790 SHL employees fall within the Settlement Class definition. (*See* Declaration of Stephanie Hearns ("Hearns Decl."), attached hereto as Exhibit 4, at ¶ 4.) The numerosity requirement is readily satisfied.

### B.    Common Issues of Fact and Law Predominate.

Rule 23(a)(2) instructs that a class may be certified only if there exist "questions of law or fact common to the class." Where, as here, the class seeks monetary relief, the common questions must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). *See also Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately."). Common questions are those "capable of class-wide resolution" such "that

determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* (citing *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (quotation marks omitted). As such, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quotation marks omitted). When "the defendant's allegedly injurious conduct differs from plaintiff to plaintiff . . . no common answers are likely to be found." *Id.* (quotation marks omitted). But when "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," class treatment is appropriate. *Id.*

Here, Plaintiff and the proposed Settlement Class's claims are based upon the same common contention and course of conduct by their employer: SHL violated BIPA by collecting employee handprints without obtaining informed written consent. (*See* Compl. ¶¶ 21–25, 29–34.) That is, Defendant treated the entire proposed Settlement Class in precisely the same manner, Plaintiff alleges—by collecting their handprint data using the same ADP timekeeping system and failing to implement any BIPA notices or disclosures—resulting in identical violations of BIPA.

This contention raises several issues of law and fact common to the Settlement Class that will predominate over any individualized issues, including: (1) whether SHL collected, captured, or otherwise obtained Plaintiff's and the Settlement Class's "biometric identifiers" or "biometric information," as defined by 740 ILCS 14/10 (collectively, "biometric data"); (2) whether SHL properly informed Plaintiff and the Settlement Class of its purposes for collecting, using, and storing their biometric data, 740 ILCS 14/15(b); (3) whether SHL obtained any written releases to collect, use, and store Plaintiff's and the Settlement Class's biometric data, *id.*; (4) whether

SHL developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric data, 740 ILCS 14/15(a); (5) whether SHL complies with any such policy; and (6) whether SHL's alleged violations of BIPA were committed negligently, 740 ILCS 14/20 (providing $1,000 in damages per negligent violation, or $5,000 in damages per willful violation). Because answering each of these questions would resolve all class members' claims in one stroke, and no individualized issues (to the extent there are any) could defeat this overwhelming commonality, predominance is satisfied. *See Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *9 (N.D. Ill. Aug. 1, 2018) (Pallmeyer, J.) (predominance requires that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating individual issues.") (internal quotation marks omitted).

Since each of these questions will prove to have a common, class-wide answer, and these questions will predominate over the litigation, the commonality and predominance requirements are satisfied.

### C. The Typicality Requirement is Satisfied.

The next prerequisite—typicality—requires that a class representative has claims that are typical of those of the putative class members. Typicality examines whether there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). Where a named plaintiff's claim "arise[s] from the same events or course of conduct that gives rise to the putative class members' claims," typicality is satisfied. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). In other words,

when the basis of the suit is the defendant's systematic business practices toward the named plaintiff and the members of the proposed class, typicality is generally satisfied.

Here, there is nothing separating Plaintiff's BIPA claim from that of any other member of the Settlement Class. She alleges that, like every other member, she (i) was required to enroll in SHL's handprint timeclock system by scanning her hand, (ii) used SHL's handprint timeclocks to punch in and out of her shifts, (iii) was identified by the timeclock each time she scanned her hand, and (iv) was never given any BIPA-compliant notices, disclosures, or requests for consent from SHL. Because she was subject to the same employment practices as everyone else, Plaintiff's BIPA claims will "stand or fall on the same facts as the claims of the putative class members." *Ziemack v. Centel Corp.*, 163 F.R.D. 530, 534 (N.D. Ill. 1995). Plaintiff's claims are therefore typical of the Settlement Class's claims.

> **D.      The Adequacy Requirement is Satisfied.**

The final Rule 23(a) prerequisite—adequacy—requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is twofold: "adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interests of the class members." *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)). To assess adequacy, courts examine whether "the named plaintiff has [(1)] antagonistic or conflicting claims with other members of the class; or (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485,

14

490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008)) (internal quotation marks omitted).

Here, both Plaintiff and proposed Class Counsel have and will continue to adequately represent the Settlement Class. Because Plaintiff suffered the same alleged injury as every other member of the Settlement Class—the collection and storage of her handprint data without her informed written consent, (Compl. ¶¶ 29–34)—her interest in redressing Defendant's alleged violations of BIPA is identical to the interests of all other members of the Settlement Class. Thus, Plaintiff does not have any interests antagonistic to those of the Settlement Class. Because Plaintiff's interests are entirely representative of and consistent with the interests of the Settlement Class, she satisfies the typicality requirement.

Likewise, proposed Class Counsel Edelson PC have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action; Edelson PC is a national leader in high stakes' plaintiffs' work ranging from class and mass actions to public client investigations and prosecutions. (*See* Firm Resume of Edelson PC, attached as Exhibit 2-A to Ufkes Decl.) The firm holds records for the largest jury verdict in a privacy case ($925 million), the largest consumer privacy settlement ($650 million), and the largest Telephone Consumer Protection Act ("TCPA") settlement ($76 million). (*Id.*) The firm filed the first-ever class action under BIPA against Facebook, *Licata v. Facebook, Inc.*, No. 2015-CH-05427 (Cir. Ct. Cook Cty. Apr. 1, 2015), secured the first-ever adversarially-certified BIPA class in that case and defended the ruling in the Ninth Circuit, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (upholding adversarial BIPA class certification), *cert. denied Facebook, Inc. v. Patel*, 140 S. Ct. 937 (2020), and recently obtained preliminary approval of a settlement agreement with Facebook to resolve the case for $650 million. *In re Facebook Biometric Info. Privacy Litig.*, No. 15-CV-

15

03747-JD, 2020 WL 4818608, at *2 (N.D. Cal. Aug. 19, 2020) (granting preliminary settlement approval). The firm is responsible for the first-ever BIPA settlement, *see Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cty.), and has paved the way to many of the favorable appellate decisions for BIPA plaintiffs. *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175 (pre-*Rosenbach*, holding violation of statute sufficient for plaintiff to be "aggrieved"); *Rottner v. Palm Beach Tan, Inc.*, 2019 IL App (1st) 180691-U (violation of statute sufficient to claim liquidated damages); *McDonald v. Symphony Bronzeville Park LLC*, 2020 IL App (1st) 192398 (holding that the exclusivity provisions of the Illinois Workers' Compensation Act ("IWCA") do not bar employee BIPA claims against employers).

The firm was recognized by Law360 as a "Practice Group of the Year" for 2020 in two categories—Class Action and Cybersecurity[3]—and for three years running as an "Illinois Powerhouse," alongside Kirkland & Ellis, Sidley Austin, Mayer Brown, Dentons, and Jenner & Block.[4] Edelson has been the only plaintiffs' firm, as well the only firm with fewer than 100 attorneys, to make the latter list. Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Ufkes Decl. ¶ 5.)

---

[3]   *Law360 Names Practice Groups of the Year*, LAW360 (Nov. 29, 2020), https://www.law360.com/articles/1327476/law360-names-practice-groups-of-the-year; Grace Dixon Hanson, *Class Action Group Of The Year: Edelson*, LAW360 (Dec. 3, 2020), https://www.law360.com/articles/1328395/class-action-group-of-the-year-edelson; Joyce Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*, LAW360 (Dec. 8, 2020), https://www.law360.com/articles/1327009/cybersecurity-privacy-group-of-the-year-edelson.

[4]   Lauraann Wood, *Illinois Powerhouse: Edelson*, LAW360 (Sept. 3, 2019), https://www.law360.com/articles/1193728/illinois-powerhouse-edelson; Diana Novak Jones, *Illinois Powerhouse: Edelson PC*, LAW360 (Aug. 28, 2018), https://www.law360.com/articles/1076447/illinois-powerhouse-edelson-pc; Diana Novak Jones, *Illinois Powerhouse: Edelson PC*, LAW360 (October 5, 2017), https://edelson.com/wp-content/uploads/2016/05/Illinois-Powerhouse-Edelson-PC.pdf.

Proposed Class Counsel The Fish Law Firm, P.C. is a deeply experienced employment class action attorney. (*See* Declaration of David Fish ("Fish Decl."), attached hereto as Exhibit 3, at ¶¶ 3.) David Fish is a leader in the area of employment law, having served on bar association councils, as well as routinely presented and published on employment law issues facing plaintiffs. (*Id.* ¶¶ 4–6.) The Fish Law Firm has regularly litigated and settled labor-related lawsuits, including a host of class actions focused on protecting the rights of thousands of Illinois employees. (*Id.* ¶ 3); *see also*, *e.g.*, *Pietrzycki v. Heights Tower Serv., Inc.*, 197 F. Supp. 3d 1007, 1019 (N.D. Ill. 2016) (appointing David Fish class counsel after noting his "litigation experience in labor/employment cases as well as class actions," as well as his and his firm's diligence). Their work has been, and will continue to be, directly beneficial to the claims of Plaintiff and the Settlement Class through the pendency of this action.

Accordingly, because Plaintiff will fairly and adequately protect the interests of the class, and because she and the Settlement Class are amply represented by qualified counsel, the adequacy requirement is satisfied.

### E.    A Class Action Is a Superior Method of Resolving the Controversy.

Rule 23(b)(3) additionally requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule sets forth four criteria germane to this requirement. All counsel in favor of certification.

The first factor, individual class members' interest in individually controlling the action, Fed. R. Civ. P. 23(b)(3)(A), weighs in favor of certification. There is no indication any class member has brought an individual BIPA suit against SHL and, given Plaintiff's allegation that SHL did not institute any BIPA-specific policies or develop written materials for its employees addressing their statutory rights, (Compl. ¶¶ 21–27), it's likely that "many class members may be

unaware of their rights under [BIPA]." *Bernal v. NRA Grp. LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Both considerations support the notion that class members' interests in individual suits is minimal. *Id.* Further, while BIPA provides for liquidated damages, the relatively modest recovery ($1,000 or $5,000, depending on whether a violation is negligent or reckless) compared to the high costs of retaining adequate counsel "is not likely to provide sufficient incentive for members of the proposed class to bring their own claims." *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (discussing the FDCPA's $1,000 statutory damages provision); *see also In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018) ("While not trivial, BIPA's statutory damages are not enough to incentivize individual plaintiffs given the high costs of pursuing discovery on Facebook's software and code base and Facebook's willingness to litigate the case.").

The second factor, the extent and nature of other proceedings, Fed. R. Civ. P. 23(b)(3)(B), also weighs in favor of certification. There are no other known actions that have progressed to any extent addressing the conduct alleged here. Thus, "'the extent and nature of any litigation concerning the controversy already begun by or against class members' is not a factor" counseling against certification. *Bernal*, 318 F.R.D. at 76 (quoting Fed. R. Civ. P. 23(b)(3)(B)).

Third, it is plainly desirable to concentrate the litigation—and to undergo the settlement approval process—in this forum, *see* Fed. R. Civ. P. 23(b)(3)(C), given that this case concerns a proposed class of plaintiffs seeking relief from SHL's exclusively Illinois-based alleged conduct. *Barnes*, 310 F.R.D. at 562 (third factor met where defendant conducted business and the events giving rise to plaintiffs' claims occurred within the court's district); *Ramirez v. GLK Foods,*

*LLC*, No. 12-C-210, 2014 WL 2612065, at *9 (E.D. Wis. June 11, 2014) (events in forum giving rise to lawsuit support concentration in the forum).

Finally, the fourth factor—"the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D)—also weighs in favor of certification, as no management problems ought to arise here. There is clear predominance of common issues, as explained above, and the fact that the entire Settlement Class is readily identifiable from SHL's records will streamline the notice process and allow for checks to be mailed directly to the 790 Settlement Class Members (assuming no opt outs) without the burden of a claims process. *Bernal*, 318 F.R.D. at 76; 2 NEWBERG ON CLASS ACTIONS § 4:72 (5th ed. 2011) ("Courts generally hold that if the predominance requirement is met, then the manageability requirement is met, as well."). Thus, consolidating class members' claims in one proceeding will generate economies of time and expense and promote legal uniformity.

More generally, Rule 23's superiority standard requires that the court recognize "the costs *and benefits* of the class device." *Mullins*, 795 F.3d at 663 (emphasis in original). Here, requiring individual cases "would make no sense," because "each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery." *Bernal*, 318 F.R.D. at 76. Rule 23's superiority requirement is therefore satisfied.

**F.    The Class Is Ascertainable.**

Finally, the proposed Settlement Class definition meets Rule 23's implicit requirement of "ascertainability," which "requires that a class . . . be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Whether a class is ascertainable depends on 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class,'" although Plaintiff here would meet both standards.

*Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 581 (N.D. Ill. 2018) (citing *Mullins*, 795 F.3d at 658).

Here, the Settlement Class definition is based solely on objective criteria: either an SHL employee had his or her hand scanned by SHL's biometric timeclocks at an Illinois facility during the relevant time period or did not. The Settlement Class exclusions are also based on objective criteria; for example, if an SHL employee (a) was a union member while working at SHL, or (b) signed a settlement agreement with SHL releasing their BIPA claims, they are excluded from the Settlement Class. Moreover, each Settlement Class member can be easily identified through SHL's records. (*See* Hearns Decl. ¶¶ 2–4.) Because the class is "defined clearly [and] membership [is] defined by objective criteria," it is ascertainable. *Mullins*, 795 F.3d at 657.

For all of these reasons, maintenance of this action as a class action is appropriate. The Court should therefore certify the Settlement Class for settlement purposes.

## V. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [with the] ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above,[5] proposed Class Counsel have extensive experience in litigating consumer privacy class actions in general, and BIPA class actions specifically; have thoroughly investigated the claims at issue; and have the resources necessary to conduct this litigation. (*See* Ufkes Decl. ¶ 2.) And as a result of their efforts here, proposed Class Counsel have secured a settlement that provides excellent monetary relief in a BIPA settlement and provides the prospective relief necessary to protect their privacy interests going forward. Thus, the Court should appoint Jay Edelson, J. Eli Wade-Scott, and Schuyler Ufkes of Edelson PC and David Fish of The Fish Law Firm PC as Class Counsel.

## VI.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval of all proposed class action settlements. The procedure for review of a proposed class action settlement is a familiar two-step process— preliminary and final approval—which was codified under Rule 23(e) just two years ago. Fed. R. Civ. P. 23(e)(1)-(2) (eff. Dec. 1, 2018); *see* 4 NEWBERG ON CLASS ACTIONS § 13:1 (5th ed.). The first step—preliminary approval—is a preliminary, pre-notification inquiry to determine whether the court "will likely be able to approve the proposal under Rule 23(e)(2)," finding that it is sufficiently fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B). In other words, at this stage, the Court needs to determine whether the proposed settlement is "within the range of possible approval" such that there is "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3

---

[5]     Courts frequently analyze counsel's adequacy under both 23(a)(4) and 23(g), which is why it is discussed twice here. 1 NEWBERG ON CLASS ACTIONS § 3:56 (5th ed.); *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592–93 (7th Cir. 2011), *as modified* (Sept. 22, 2011) (reviewing counsel's adequacy under Rule 23(a)(4) but mentioning the Rule 23(g) factors in its analysis).

(7th Cir. 1982).[6] Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step—the final fairness determination. *Gautreaux*, 690 F.2d at 621.

While "[f]ederal courts naturally favor the settlement of class action litigation," a multi-factor test must be used to determine whether the proposed settlement is likely to be found fair, reasonable, and adequate. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)) (internal quotations omitted). Rule 23(e)(2) directs courts to consider whether: (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

The proposed Settlement in this case—which creates a fund constituting $1,000 per person, strong prospective relief, and sends checks directly to Settlement Class Members—easily satisfies these factors.

---

[6]     Notably, the factors to be considered under the amended Rule 23 "overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *2 (S.D. Ill. Dec. 16, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). For this reason, decisions prior to the amendment can still provide guidance to the Court.

### A. Plaintiff Lopez-McNear and Proposed Class Counsel Have Adequately Represented the Settlement Class.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment; *see Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506 at *3 (M.D. Ga. Jan. 17, 2019). In considering this factor, courts are to examine whether plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. Ultimately, this factor is generally satisfied where the named plaintiff participated in the case diligently, and where class counsel fought hard on behalf of plaintiff and the class throughout the litigation. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2018 WL 4659274, at *3 (N.D. Ill. Sept. 28, 2018).

Here, Plaintiff Lopez-McNear has been involved in nearly every aspect of this case, including by helping her attorneys investigate her BIPA claims and prepare the Class Action Complaint and Demand for Jury Trial, preserving documents, reviewing and approving her MIDP responses, conferring with her counsel throughout the litigation, and reviewing and approving the Settlement Agreement before signing it. (Ufkes Decl. ¶ 8.) Had the Parties not reached a resolution, Ms. Lopez-McNear was prepared to sit for her deposition (after a number of scheduled defense depositions). (*Id.*) Without Ms. Lopez-McNear stepping up to represent the class and taking on these tasks as the lead plaintiff, the relief secured for the Settlement Class wouldn't have been possible. Given her efforts and aligned interest with the class, there can be

23

no doubt that Ms. Lopez-McNear has only acted in the best interest of the Settlement Class and has adequately represented them.

Likewise, proposed Class Counsel's performance in this case demonstrates that their representation has been beyond adequate, especially when considering (i) the investigation and discovery conducted (both formally and informally) and (ii) the benefits of the Settlement compared to similar privacy settlements, including those under BIPA. First, the considerable amount of investigation and discovery completed by Plaintiff's counsel ensured that they had adequate information to assess the strength of the case and engage in settlement discussions. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the court and parties have enough information "to evaluate the merits of this case"). Prior to even filing this case, Plaintiff's counsel investigated SHL and the technology it used to allegedly collect the class members' handprint data. (Ufkes Decl. ¶ 2.) Once the case was filed and it was clear the case would not be resolved through the July 2019 mediation, Plaintiff's counsel pressed forward with formal written discovery as soon as possible, ultimately serving two sets of discovery requests on SHL, exchanging MIDP disclosures, and serving a third-party subpoena for documents to ADP, all of which resulted in the production of over 9,000 pages of documents for Plaintiff's counsel's review. (*Id.*) *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (approving settlement where "[c]lass [c]ounsel undertook formal and informal discovery" and was "given access to . . . thousands of documents" related to key issues in the case). The facts underlying Plaintiff's allegations in this case, though by no means their legal import, are now substantially undisputed: SHL used a handprint-scanning timeclock to verify its employees' identities without complying with BIPA.

24

*See In re AT & T Mobility*, 270 F.R.D. at 350 (approving settlement where "the focus of th[e] litigation appears to be more on legal than factual issues, and there is no indication that [more] formal discovery would have assisted the parties in devising the [p]roposed [s]ettlement [a]greement"). In addition to formal written discovery, the Parties exchanged informal discovery concerning the size and composition of the class to aid in their settlement negotiations. (*See* Ufkes Decl. ¶ 6; Hearns Decl. ¶¶ 2–4.) In short, the issues in this litigation have crystallized sufficiently for Plaintiff and her counsel to assess the strengths and weaknesses of their negotiating position (based upon the litigation to date, the anticipated outcomes of oral fact discovery and expert discovery, and additional motion practice) and evaluate the appropriateness of any proposed resolution. *See Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *10 (N.D. Ill. Mar. 2, 2016) (concluding that "extensive formal discovery, when measured against the cost that would be incurred," would not place the parties in a better position than they are now to determine an appropriate settlement value); *see also Bayat v. Bank of the West*, No. 13-cv-2376, 2015 WL 1744342, at *6 (N.D. Cal. Apr. 15, 2015) (concluding that sufficient discovery had been completed to evaluate the settlement "because the issues in this case are straightforward and not particularly fact intensive").

Second, the Settlement achieved by Plaintiff's counsel excels in comparison to other statutory privacy settlements, including many BIPA settlements, both in terms of monetary relief and ease of administration. If approved, each Settlement Class Member will be sent a check for approximately $620, without the burden, expense and delay of submitting a claim. This Settlement compares favorably against other recent BIPA settlements of its size, and dwarfs the amounts recovered in many other statutory privacy class actions, which have commonly secured no relief to the class or only *cy pres* relief. *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 820–

22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications

Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per

class member—where $10,000 in statutory damages were available per claim); *In re Google*

*Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011)

(resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only

settlement); *see also Frank v. Gaos*, 139 S. Ct. 1041, 1047–48 (2019) (Thomas, J., dissenting)

("Whatever role *cy pres* may permissibly play in disposing of unclaimed or undistributable class

funds . . . *cy pres* payments are not a form of relief to the absent class members and should not be

treated as such (including when calculating attorney's fees). And the settlement agreement here

provided no other form of meaningful relief to the class.").

  As discussed above, BIPA settlements have had a wide range, with some finally-

approved settlements depressing the amount defendants have to pay with credit monitoring, a

needless—in the employment context—claims process, caps on the amount claiming class

members can recover, and reversion of unclaimed funds. *E.g.*, *Carroll*, 2017-CH-01624 (credit

monitoring only); *McGee v. LSC Commc'ns*, 2017-CH-12818 (Cir. Ct. Cook Cty.) (providing

$750 *only* to those individuals who filed claims); *Marshall*, 2017-CH-14262 (providing $270

*only* to those individuals who filed claims). In cases against employers, the defendant is a ready

source of contact information for the class and, thus, checks can be sent directly, doing away

with a claims process.

  As discussed above, the leading employer settlements distribute a fund *pro rata* to all

class members via direct checks—not sending out a flat amount to those few people who file a

claim. To compare apples to apples, on average, defendants in these settlements have contributed

a *gross* amount per person (before fees and costs) of about $1,000 per person. *See, e.g., Jones v.*

26

*CBC Rest. Corp.*, 19-cv-06736 (N.D. Ill. Oct. 22, 2020) (fund constituting $800 per person for 4,053 class members); *Johnson v. Rest Haven Illiana Christian*, 2019-CH-01813 (Cir. Ct. Cook Cty.) (fund constituting $900 per person for 3,352 class members); *Dixon v. Grunt Style LLC*, 2019-CH-01891 (Cir. Ct. Cook Cty.) (fund constituting $1,000 per person for 450 class members); *Edmond*, No. 2018-CH-09573 (fund constituting $1,000 per person for 494 class members); *Delgado v. America's Auto Auction*, No. 2019-CH-4164 (Cir. Ct. Cook Cty.) (fund constituting $1,000 per person for 796 class members); *Watts*, No. 2017-CH-12756 (fund constituting $1,000 per person for 858 class members); *George v. Schulte Hosp. Grp., Inc., et al.*, 2018-CH-04413 (Cir. Ct. Cook Cty.) (fund constituting approximately $1,000 per person for 920 class members); *Martinez*, 19-cv-07012 (fund constituting $1,000 per person for 1,787 class members). This Settlement's $1,000 per person gross amount under the direct-checks model, resulting in net payments of approximately $620 per person, falls squarely in line with these leading settlements, and is especially significant considering the financial strain SHL demonstrated through its financial statements.

Finally, aside from the monetary relief, the non-monetary benefits created by the Settlement—SHL's agreement to destroy current and former employees' biometric data and comply with BIPA going forward should it revert to using a biometric timekeeping system in Illinois—also demonstrate Plaintiff's and proposed Class Counsel's outstanding representation of the class. (*See* Agreement § 2.2.) This prospective relief aligns perfectly with both the goals of BIPA and those of this lawsuit, as it will ensure that Defendant's past, current, and future employees are protected as the legislature intended.

In the end, if the Settlement is approved, the Settlement Class will reap its valuable benefits thanks to Plaintiff's and proposed Class Counsel's hard work pursuing this case and representing their interests. This factor is well satisfied.

### B. The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties.

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at arm's length. Fed. R. Civ. P. 23(e)(2)(B). The answer here is easy: yes. After actively litigating this case for over a year, exchanging substantial formal written discovery, and with four scheduled depositions approaching, the Parties agreed in early September of 2020 that it was an appropriate time to engage in meaningful settlement discussions. (Ufkes Decl. ¶ 6.) *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where "the parties have vigorously defended their positions throughout the litigation . . . and engaged in discovery" prior to reaching settlement). Throughout the negotiation process, the Parties informally exchanged information regarding the size and composition of the class to further inform their negotiating positions, and ultimately engaged in multiple rounds of vigorous negotiations before agreeing to the principal terms of a class settlement on October 29, 2020—just a day before Plaintiff was to depose Defendant's IT consultant. (Ufkes Decl. ¶ 6.) After reaching those terms, it took the Parties another six weeks to reach agreement on the final terms of a written agreement, resulting in a sharply-negotiated Settlement Agreement. (*Id.*)

The arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, provides significant cash payments to Settlement Class Members, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving

settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"). For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered")

### C. The Settlement Treats All Settlement Class Members Equally.

The next Rule 23(e)(2) factor considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, given that each Class Member has nearly identical BIPA claims for monetary and injunctive relief, the proposed Settlement treats each of them identically. In terms of monetary relief, Defendant has agreed to contribute $1,000 per member of the Settlement Class to the Settlement Fund, from which each Class Member will receive a single, *pro rata* cash payment. (Agreement §§ 1.25, 1.26, 2.1); *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). And because checks will be sent directly to class members without a claims process, each and every Class Member will receive a check. The Settlement also provides for identical prospective relief requiring SHL to destroy all of its current and former Illinois employees' biometric data in its possession and comply with BIPA going forward in a uniform manner. (Agreement § 2.2.) Further, in terms of the release, each Class Member will be releasing the same BIPA claims against SHL. (*Id.* §§ 1.18, 3.1.) Because the Settlement treats each member of the Settlement Class equally, this factor is well satisfied.

29

**D.     The Relief Secured for the Settlement Class Is Adequate and Warrants Approval.**

The final and most substantive factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 instructs courts to take into account several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. *Id.* As explained below, each of these sub-factors demonstrate that the relief provided by the Settlement is excellent— well beyond adequate—and should be approved.

**1.     The cost, risk, and delay of further litigation compared to the Settlement's benefits favors preliminary approval.**

In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 amendment.

The Settlement here warrants approval because it provides immediate relief to the Settlement Class while avoiding potentially years of complex litigation and appeals. *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). And in light of BIPA's relative infancy, absent the Settlement, the Parties were likely to litigate a number of issues that are either still being resolved by the courts or are matters of first impression. *See*, *e.g.*, *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (noting that "legal uncertainties at the time of settlement favor approval"); *Pichler v. UNITE*, 775 F. Supp. 2d 754, 759 (E.D. Pa. 2011) (approving class action settlement in light of the complexity of future litigation on issues of first

impression). For instance, as SHL raised in its amended answer, (*see* dkt. 41 at 19, Aff. Def. 6), SHL would continue to assert that BIPA claims by employees are preempted by the IWCA, 820 ILCS 305/1 *et seq.* While the Illinois Appellate Court recently rejected this argument in *McDonald*, 2020 IL App (1st) 192398, there's still a chance that the Illinois Supreme Court will weigh in.[7] The Illinois Appellate Court is also set to decide an appeal in *Tims v. Black Horse Carriers, Inc.*, No. 1-20-0563, to clarify the applicable limitations period for BIPA claims: whether a one or five-year limitations period applies. Although every state and federal trial court to consider the issue has rejected a one-year limitations period, a different result from the Illinois Appellate Court would be persuasive authority to time bar the vast majority of the putative class members' BIPA claims in this case. Plaintiff remains confident that both arguments will ultimately be defeated, but the risk and delay of resolving appeals on these issue (among the other issues of first impression presented by BIPA) militates in favor of settlement here. Furthermore, SHL—like nearly every other BIPA defendant—was likely to argue that the information captured by its handprint scanners were not actually "biometric identifiers" or "biometric information" subject to BIPA. Plaintiff again puts little stock in this argument, but it would need to be defeated at summary judgment or trial and remains an issue ungoverned by precedent. This Settlement provides excellent, direct relief to the Settlement Class Members now, avoiding years of delay to resolve these questions.

Likewise, the Parties also would have been forced to litigate the issue of class certification adversarially. *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment (instructing courts to consider the likelihood of certifying the class for litigation in

---

[7] Symphony Bronzeville Park LLC's petition for leave to appeal is currently pending before the Illinois Supreme Court.

evaluating this sub-factor); *see also Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 at *6 (S.D. Cal. 2020) ("Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class."). Although Plaintiff believes this case is amenable to class certification given Defendant's uniform conduct, *see In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. at 549 (certifying Rule 23(b)(3) class of Facebook users in Illinois for whom Facebook created and stored a face template), and that she would ultimately prevail on certification issues, that process is by no means risk-free. Given the significant exposure that SHL faced, there was no doubt that these issues would be pressed on appeal, further delaying relief.

Protracted litigation would also consume significant resources, including the time and costs associated with oral discovery, securing expert testimony on complex biometric and data storage issues, and again, motion practice, trial and any appeals. It is possible that "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now." *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Because the proposed Settlement offers immediate—and substantial—monetary relief to the Settlement Class while avoiding the need for extensive and drawn-out litigation, preliminary approval is appropriate. *See*, *e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 2. The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval.

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple

32

and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53. The proposed

Settlement here does just that by sending checks directly to every Settlement Class Member

without the need to submit a claim form, meaning *every* Settlement Class Member will receive a

cash payment and won't need to wait on an expensive and protracted claims process. *See*

*Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, dkt. 57 (N.D. Ill. Sept. 10, 2020)

(granting final approval of BIPA settlement similarly providing settlement checks directly to

class members); *see also* 4 NEWBERG ON CLASS ACTIONS § 13:53 ("[A] settlement without a

claims-made procedure (where a sum certain is disgorged from the defendant) is more likely to

be found fair, reasonable, and adequate."). There can be no doubt that the proposed settlement

administration plan is the most effective and feasible method of distributing monetary relief to

the Settlement Class Members.

### 3. The terms of the requested attorneys' fees are reasonable.

The third and final relevant sub-factor[8] considers the adequacy of the relief provided to

the class taking into account "the terms of any proposed award of attorney's fees, including

timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved,

proposed Class Counsel plans to petition the Court for an award of reasonable attorneys' fees

after the Settlement Class has received notice of the Settlement. The Settlement's contemplated

method of calculating attorneys' fees (i.e., the percentage-of-the-fund method) and its limit on

attorneys' fees (i.e., no more than 35% of the non-reversionary Settlement Fund) are reasonable

and predicated on the outstanding relief provided to the Settlement Class. To be sure, the

---

[8]     The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is not applicable here as the written Settlement Agreement provided to the Court represents the entirety of the Parties' proposed Settlement. (Ufkes Decl. ¶ 7.) Since there are no side agreements to be identified, this sub-factor weighs in favor of preliminary approval.

33

percentage-of-the-fund method has been used to determine a reasonable fee award in every BIPA

class action settlement creating a common fund to date, and a 35% award will adequately capture

the hypothetical *ex ante* agreement that the Settlement Class would have entered into with Class

Counsel had they sought them out in the market, given the risks in the case. *See Williams v.*

*Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011); *e.g.*, *Cornejo*, 1:18-cv-07018

(awarding 35% of fund); *Lloyd v. Xanitos*, 2018-CH-15351 (Cir. Ct. Cook Cty.) (awarding 35%

of fund); *Barnes v. Aryzta LLC*, No. 2017-CH-11312 (Cir. Ct. Cook Cty. Nov. 13, 2020)

(awarding 35% of fund); *Sekura*, 2015-CH-16694 (awarding 40% of fund); *Zepeda v.*

*Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (Cir. Ct. Cook Cty.) (awarding 40% of fund);

*Svagdis v. Alro Steel Corp.*, 2017-CH-12566 (Cir. Ct. Cook Cty.) (awarding 40% of fund); *see*

*also* 5 NEWBERG ON CLASS ACTIONS § 15:83 (noting that, generally, "50% of the fund is the

upper limit on a reasonable fee award from any common fund"). Accordingly, that the

Settlement permits the Court to award 35% of the fund in attorneys' fees is more than

appropriate. Finally, if approved, the Settlement provides that attorneys' fees will be paid within

five business days after final judgment, including any appeals. (Agreement §§ 1.12, 8.1.) These

terms are reasonable and should be preliminarily approved.

For these reasons, Plaintiff and proposed Class Counsel submit that the monetary and

prospective relief provided by the Settlement weighs heavily in favor of a finding that it is fair,

reasonable, and adequate, and well within the range of possible approval. The Court should grant

preliminary approval.

## VII.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE.

Rule 23 and Due Process require that for any "class proposed to be certified for purposes

of settlement under Rule 23(b)(3)[,] the court must direct to class members the best notice

practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [proposed settlement, voluntary dismissal, or compromise.]" Fed. R. Civ. P. 23(e)(1). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (eff. Dec. 1, 2018). The substance of the notice to the Settlement Class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the Settlement Class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settlement contemplates a multi-part Notice Plan. First, Defendant will provide the Settlement Administrator with a list of all names, e-mail addresses, and U.S. Mail addresses of the Settlement Class. (Agreement § 4.1(a).) Once provided, the Settlement Administrator will update the addresses through the National Change of Address database and send direct Notice by e-mail to all members of the Settlement Class for whom a valid e-mail address is identified in Defendant's records. (Agreement § 4.1(b), (c); *see* Exhibit 1-A.) If no e-mail address is available for any class members, or if any e-mail transmissions result in "bounce-backs," the Settlement Administrator will send those class members direct Notice by First Class U.S. Mail. (Agreement § 4.1(c); *see* Exhibit 1-B.) If any Notice by mail is returned as undeliverable, the Settlement Administrator will forward it to any forwarding addresses provided by the U.S. Postal Service, and if none are provided, the Settlement Administrator will perform skip traces to attempt to obtain the most recent addresses for such Settlement Class members. (Agreement § 5.1(b).)

All of the Notice documents are written in plain, easily-understood language. To ensure a comprehensive Notice, the e-mail and mail Notice will direct class members to a Settlement Website, which will provide class members 24-hour access to further information about the case, including important court documents and a detailed "long form" Notice document. (Agreement § 4.1(d); *see* Exhibit 1-C.) Supporting the e-mails, mail notices, and Settlement Website will be a toll-free telephone line through which class members can contact Class Counsel and the Settlement Administrator to obtain additional information about the Settlement.

In sum, the proposed methods for providing notice to the Settlement Class comports with both Rule 23 and Due Process, and thus, should be approved.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement Agreement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the Notice to the members of the Settlement Class, (iv) appointing Plaintiff Sonia Lopez-McNear as Class Representative, (v) appointing Jay Edelson, J. Eli Wade-Scott, and Schuyler Ufkes of Edelson PC and David Fish of The Fish Law Firm PC as Class Counsel, (vi) scheduling a final fairness hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.[9]

Respectfully submitted,

**SONIA LOPEZ-MCNEAR,** individually and on behalf of all others similarly situated

Dated: December 22, 2020                    By: /s/Schuyler Ufkes

[9]     Plaintiff intends to submit a proposed Preliminary Approval Order for the Court's convenience and to propose future case deadlines.

One of Plaintiffs' attorneys

Jay Edelson
jedelson@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

David J. Fish
dfish@fishlawfirm.com
THE FISH LAW FIRM PC
200 East 5th Avenue, Suite 123
Naperville, Illinois 60563
Tel.: 630.355.7590
Fax: 630.778.0400