**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| SONIA LOPEZ-MCNEAR, individually and on behalf of the Settlement Class, | |
| *Plaintiff*, | Case No.: 19-cv-2390 |
| v. | Honorable Rebecca R. Pallmeyer |
| SUPERIOR HEALTH LINENS, LLC, a Wisconsin limited liability company, | |
| *Defendant*. | |

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW
FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     BACKGROUND ................................................................................3

        A.      BIPA and the Underlying Claims ........................................3

        B.      Litigation History and the Work Performed
                for the Settlement Class ......................................................5

        C.      The Settlement Secures Excellent Relief
                for the Settlement Class ......................................................7

III.    THE REQUESTED ATTORNEYS' FEES, EXPENSES, AND INCENTIVE
        AWARD ARE REASONABLE AND SHOULD BE APPROVED .............9

        A.      Percentage-of-the-Fund Should be Used to
                Determine Fees Here ...........................................................9

        B.      35% Is a Reasonable Fee Award Here ..............................11

                1.      *This case presented serious obstacles to recovery, and Class Counsel
                        litigated the case mindful of the possibility that the Class might recover
                        nothing* ..................................................................13

                2.      *Class Counsel achieved an excellent result for the Class* ...........14

        C.      A Lodestar Analysis Confirms the Reasonableness
                of the Requested Fees ........................................................15

IV.     THE COURT SHOULD APPROVE THE REQUESTED
        INCENTIVE AWARD ......................................................................18

V.      CONCLUSION ................................................................................19

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ...................................................................8

*Frank v. Gaos,*
139 S. Ct. 1041 (2019)...............................................................2

*Hall v. Cole,*
412 U.S. 1 (1973) .....................................................................15

**United States Circuit Court of Appeals Cases**

*Americana Art China, Co., Inc. v. Foxfire Printing & Packaging Inc.,*
743 F.3d 243 (7th Cir. 2014) ...................................................14

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998) ...........................................18, 19

*Florin v. Nationsbank of Ga. N.A.,*
60 F.3d 1245 (7th Cir. 1995) ...................................................10

*Harman v. Lyphomed, Inc.,*
945 F.2d 969 (7th Cir. 1991) ..............................................10, 17

*In re Google Referrer Header Privacy Litig.,*
869 F.3d 737 (9th Cir. 2017) .....................................................1

*In re Synthroid Mktg. Litig.,*
264 F.3d 712 (7th Cir. 2001) ...........................................2, 9, 12

*In re Trans Union Corp. Privacy Litig.,*
629 F.3d 741 (7th Cir. 2011) .....................................................9

*Montgomery v. Aetna Plywood,*
231 F.3d 399 (7th Cir. 2000) ...................................................11

*Pickett v. Sheridan Health Care Ctr.,*
813 F.3d 640 (7th Cir. 2016) ...................................................16

*Pearson v. NBTY, Inc.,*
772 F.3d 778 (7th Cir. 2014) ...................................................11

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ........................................................................9

*Skelton v. General Motors*,
    860 F.2d 250 (7th Cir. 1988) ........................................................................8

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ....................................................................8, 9

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ......................................................................11

**United States District Court Cases**

*Adkins v. Facebook, Inc.*,
    No. 18-cv-05982-WHA (N.D. Cal. Nov. 15, 2020) ......................................14

*Alvarado v. Int'l Laser Prods., Inc.*,
    No. 18-cv-7756 (N.D. Ill.) ......................................................................11, 12

*Barnes v. Aryzta*,
    No. 1:17-cv-07358, 2019 WL 277716 (N.D. Ill. 2019).................................16

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
    No. 18-cv-7018 (N.D. Ill.) ..................................................................2, 11, 12

*Dixon v. Washington & Jane Smith Cmty.-Beverly*,
    No. 17-cv-8033 (N.D. Ill.) ......................................................................12, 19

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016) ........................................................11, 12, 19

*Goodman v. Hangtime, Inc.*,
    No. 14-cv-01022 (N.D. Ill.) ..........................................................................16

*Hale v. State Farm Mutual Auto. Ins. Co.*,
    No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. 2018).................................10

*In re Capital One Tel. Consumer Protection Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015)...............................................................14

*In re Facebook Biometric Info. Privacy Litig.*,
    No. 15-CV-03747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021) ...............16

*In re Facebook Biometric Info. Privacy Litig.*,
    No. 3:15-CV-03747-JD, 2018 WL 2197546 (N.D. Cal. May 14, 2018)..........14

*In re Google LLC Street View Elec. Commc'ns Litig.*,
    No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ......................... 14

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ....................................................................*passim*

*Norberg v. Shutterfly, Inc.*,
    152 F. Supp. 3d 1103 (N.D. Ill. 2015)............................................................. 13

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011).............................................................. 18

*Spano v. Boeing Co.*,
    No. 06-cv-743-NJR-DGW, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ....................... 19

*Wilkins v. HSBC Bank Nevada, N.A.*,
    No. 14 C 190, 2015 WL 890566 (N.D. Ill. 2015) .............................................. 9

**Illinois Supreme Court Cases**

*McDonald v. Symphony Bronzeville Park LLC*,
    No. 126511 ................................................................................... 13

*Rosenbach v. Six Flags Ent. Corp.*,
    2019 IL 123186 ........................................................................... 5, 13

**Illinois Appellate Court Cases**

*Marion v. Ring Container Techs., LLC*,
    No. 3-20-0184 (3d Dist.) .................................................................. 13

*Tims v. Black Horse Carriers, Inc.*,
    No. 1-20-0563 (1st Dist.)................................................................. 13

**Illinois Circuit Court Cases**

*Barnes v. Aryzta*,
    No. 2019-CH-02576 (Cir. Ct. Cook Cnty.) ......................................... 12, 18, 19

*Bernal v. ADP*,
    No. 2017-CH-12364 (Cir. Ct. Cook Cnty) ............................................. 12, 19

*Brown v. Moran Foods, Inc.*,
    No. 2019-CH-02576 (Cir. Ct. Cook Cnty.) ......................................... 3, 12, 18

*Bryski v. Nemera Buffalo Grove*,
  No. 2018-CH-07264 (Cir. Ct. Cook Cnty.) ...................................................................15

*Carroll v. Crème de la Crème*,
  No. 2017-CH-01624 (Cir. Ct. Cook Cnty.) ............................................................11, 15

*Chipman v. Jullian Elec. Serv. & Eng'g*,
  No. 18-LM-1073 (Cir. Ct. Will Cnty.) ....................................................................2, 15

*Kirby v. Gurtler Chemicals, Inc.*,
  No. 2019-CH-09395 (Cir. Ct. Cook Cnty.) ...........................................................2, 15

*Guerrero v. Bob's Discount Furniture*,
  No. 2019-CH-1046 (Cir. Ct. Cook Cnty.) ...................................................................15

*Marshall v. Lifetime Fitness*,
  No. 2017-CH-14262 (Cir. Ct. Cook Cnty.) ...................................................................2

*Sekura v. L.A. Tan Enters.*,
  No. 2015-CH-16694 (Cir. Ct. Cook Cnty.) ...........................................................2, 12

*Sharrieff v. Raymond Mgmt. Co., Inc.*,
  No. 2018-CH-01496 (Cir. Ct. Cook Cnty.) .................................................................12

*Svagdis v. Alro Steel Corp.*,
  No. 2017-CH-12566 (Cir. Ct. Cook Cnty.) .................................................................12

*Zepeda v. Kimpton Hotel & Rest.*,
  No. 2018-CH-02140 ....................................................................................................12

## Miscellaneous Authority

740 ILCS 14..................................................................................................*passim*

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*,
  7 J. Empirical L. Stud. 811 (2010) ...............................................................................10

Fed. R. Civ. P. 23...............................................................................................................8

Herbert Newberg & Alba Conte, *Newberg on Class Actions*,
  § 14:6 (William B. Rubenstein ed., 4th ed.) ................................................................17

Herbert Newberg & Alba Conte, *Newberg on Class Actions*,
  § 15:83 (William B. Rubenstein ed., 5th ed.) ..............................................................11

*Meg Marco, Creepy Fingerprint Pay Processing Company Shuts Down*, CONSUMERIST,
    https://goo.gl/rKJ8oP ........................................................................................3

*Matt Marshall, Pay By Touch in trouble, founder filing for bankruptcy*, VENTURE BEAT,
    http://goo.gl/xT8HZW ........................................................................................3

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*,
    53 UCLA L. Rev. 1303 (2006) ....................................................................3, 19

## I.    INTRODUCTION

Plaintiff Sonia Lopez-McNear ("Plaintiff") brought this class action lawsuit alleging that her employer, Defendant Superior Health Linens, LLC ("Defendant" or "SHL"), violated the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* Specifically, Plaintiff alleged that SHL collected employees' handprints as the method for clocking in and out of work, but failed to provide required disclosures and obtain written consent to the collection of biometric data, *see* 740 ILCS 14/15(b), or create and abide by a publicly-available retention policy with guidelines for the destruction of biometric data, 740 ILCS 14/15(a).

After more than a year of litigation and discovery in this action, Plaintiff was able to secure a remarkably strong settlement: a non-reversionary Settlement Fund of $790,000, equaling $1,000 per person in the Settlement Class (before administrative costs and attorneys' fees).[1] This monetary relief will be provided to class members automatically, without the need to file a claim: Settlement Class Members will just get a check in the mail—if fees and costs are approved—for approximately $625. Moreover, SHL discontinued its collection of biometric data shortly after this lawsuit was filed, and under the Settlement, has agreed to delete all biometric data of current and former employees, and promises to comply with the law if SHL ever uses biometric timeclocks again.

Most privacy settlements pale in comparison to the individual class member monetary relief provided here. The Settlement dwarfs the results secured under similar privacy statutes, which have historically provided *de minimis* monetary relief—if any at all. *See, e.g.*, *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 740 (9th Cir. 2017), *vacated on other*

---

[1]    A copy of the parties' Class Action Settlement Agreement ("Settlement" or "Agreement") is attached hereto as Exhibit 1. Except as otherwise indicated, all defined terms used herein shall have the same meanings ascribed to them in the Settlement Agreement.

*grounds by Frank v. Gaos*, 139 S. Ct. 1041 (2019) (approving *cy pres*-only fund with not a penny to class members). And many settlements under BIPA—even on near-identical facts— have settled with reversionary funds, far less money going to class members, and a needless claims process. *E.g., Marshall v. Lifetime Fitness*, No. 2017-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019) (providing $270 and credit monitoring only to individuals who filed claims, reverting remainder of unclaimed funds to defendant). Among BIPA's leading settlements which, like this one, provide direct checks to Class Members without a reversion of unclaimed funds to the Defendant, this Settlement also stacks up favorably: providing gross total cash payments of $1,000, despite SHL's financial troubles and a relatively-larger class size here. *E.g., Chipman v. Jullian Elec. Serv. & Eng'g*, No. 18-LM-1073 (Cir. Ct. Will Cnty. Apr. 4, 2020) ($800 per class member for 614-member class, direct checks); *Kirby v. Gurtler Chemicals, Inc.*, No. 2019-CH-09395 (Cir. Ct. Cook Cnty. Dec. 17, 2020) ($1,000 per class member for 69-member class, direct checks).

Class Counsel now respectfully moves the Court for 35% of the Settlement Fund (less the amount paid for notice) as attorneys' fees and expenses for a total of $265,717.22. The requested fee award accurately reflects the fee arrangement that a Settlement Class Member would have entered into with Class Counsel had they made an *ex ante* bargain before heading into litigation like this, which was fraught with matters of first impression. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001). Indeed, the requested fee award is consistent with—and at the low end of—what is typically awarded in BIPA cases. *See, e.g., Sekura v. L.A. Tan Enters.*, No. 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (awarding 40% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 18-cv-7018, dkt. 57 (N.D. Ill) (awarding 35% of the fund).

Plaintiff also requests a $5,000 incentive award, which is similarly reasonable. Incentive

awards in class action settlements frequently exceed $10,000.00. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1348 (2006) (finding that "[t]he average award per class representative was $15,992"). Plaintiff's requested award reflects her participation throughout this case, including in the investigation of the action, discovery, and the settlement process, and is comfortably in line with what has been awarded in BIPA cases. *E.g.*, *Brown v. Moran Foods, Inc.*, No. 2019-CH-02576 (Cir. Ct. Cook Cnty. Mar. 16, 2021) (granting $5,000 incentive award in BIPA case). Plaintiff's requested fees and incentive award are reasonable and warrant the Court's approval.

## II. BACKGROUND

A brief summary of the underlying facts and law will lend context to the instant motion, and demonstrates the reasonableness of the requested fees, costs, and incentive award.

### A. BIPA and the Underlying Claims

In the early 2000s, a company called Pay By Touch began installing fingerprint-based checkout terminals at grocery stores and gas stations. (Dkt. 1-1, Complaint ("Compl.") ¶¶ 12–13.) The premise was simple: swipe your credit card and let the machine scan your index finger, and the next time you buy groceries or gas, you won't need to bring your wallet—you'll just need to provide your fingerprint. But by the end of 2007, Pay By Touch had filed for bankruptcy. (*Id.* ¶ 13.) When Solidus Networks, Inc., Pay By Touch's parent company, began shopping Illinois consumers' fingerprints as an asset to its creditors, a public outcry erupted.[2] Though the bankruptcy court eventually ordered Pay By Touch to destroy its database of fingerprints (and their ties to credit card numbers), the Illinois legislature took note of the grave dangers posed by

---

[2]     *See*, *e.g.*, Meg Marco, *Creepy Fingerprint Pay Processing Company Shuts Down*, CONSUMERIST, available at https://goo.gl/rKJ8oP (last accessed Mar. 23, 2021); Matt Marshall, *Pay By Touch In Trouble, Founder Filing For Bankruptcy*, VENTURE BEAT, available at http://goo.gl/xT8HZW (last accessed Mar. 23, 2021).

the irresponsible collection and storage of biometric data without any protections. *See* Ill. House Transcript, 2008 Reg. Sess. No. 276.

Recognizing the "very serious need" to protect Illinois citizens' biometric data—which includes retina scans, fingerprints, voiceprints, and scans of hand or face geometry—the Illinois legislature unanimously passed BIPA in 2008 to provide individuals recourse when companies failed to appropriately handle their biometric data in accordance with the statute. (*See* Compl. ¶ 14; 740 ILCS 14/5.) Thus, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ."

740 ILCS 14/15(b). BIPA also establishes standards for how companies must handle Illinois consumers' biometric identifiers and biometric information. For example, BIPA requires companies to develop and comply with a written policy establishing a retention schedule and guidelines for permanently destroying biometric information. 740 ILCS 14/15(a). To enforce the statute, BIPA provides a civil private right of action and allows for the recovery of statutory damages in the amount of $1,000 for negligent violations—or $5,000 for willful violations—plus costs and reasonable attorneys' fees to any person "aggrieved by a violation" of the statute. *See* 740 ILCS 14/20.

As the Illinois Supreme Court assessed the legislature's intent in passing BIPA, the statute:

> vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. . . . These procedural protections are particularly crucial in our digital world because technology now permits the wholesale collection and storage of an individual's unique biometric identifiers—identifiers that cannot be changed if compromised or misused. When a private entity fails to adhere to the statutory procedures . . . the right of the individual to maintain her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized. This is no mere technicality. The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 34 (internal citations and quotations omitted).

Plaintiff's class action arises in the employment context, where she claims that SHL used a biometric timekeeping system to regulate and monitor its employees' working hours. (Compl. ¶ 23.) She alleges that when she first began working for SHL, the company required her—and all other new employees—to scan her hand to enroll her in SHL's employee handprint database, and subsequently use her hand in order to "punch" into or out of work. (*Id.* ¶¶ 22–23, 29–30.) In collecting her handprint, however, Plaintiff alleges that SHL violated section 15(a) of BIPA by failing to develop a data-retention policy and guidelines for permanently destroying biometric data, failing to publicly disclose any such policy, and failing to comply with it. (*Id.* ¶¶ 25, 32, 43–44, 51–52.) Plaintiff further alleges that SHL violated section 15(b) of BIPA by collecting, using, and storing its employees' biometric data without obtaining their informed, written consent. (*Id.* ¶¶ 24, 29–33, 42, 44, 48–50, 52.)

**B.    Litigation History and the Work Performed for the Settlement Class.**

Class Counsel secured the proposed settlement only after significant discovery and several rounds of settlement negotiations. (Declaration of Schuyler Ufkes ("Ufkes Decl."), attached hereto as Exhibit 2, at ¶¶ 3–11.) Plaintiff Lopez-McNear filed her complaint in the Circuit Court of Cook County on February 28, 2019. Following Defendant's removal of the case

to this Court, the Parties began to discuss the strengths and weaknesses of each party's position, as well as SHL's financial position. Counsel exchanged informal discovery, including SHL's relevant insurance policies and information to confirm SHL's financial position. (*Id.* ¶ 2.) The Parties volleyed several settlement offers back and forth, and ultimately agreed that mediation would be productive. (*Id* ¶ 3.) On July 1, 2019, the Parties requested a brief stay of the case to formally mediate with the Honorable Judge Eileen Brewer (Ret.) of JAMS Chicago. (Dkt. 17.) The Parties mediated the case in person on July 22, 2019 but were ultimately unable to reach agreement. (Ufkes Decl. ¶ 3.)

The Parties then conducted a face-to-face Rule 16 conference in late July 2019 and submitted a discovery planning report. (*See* dkt. 26.) The Court adopted the Parties' discovery plan on August 7, 2019. (Dkt. 27.) Plaintiff then promptly issued her first set of interrogatories and requests for production to SHL on August 29, 2019, prior to SHL's answering the Complaint. (Ufkes Decl. ¶ 4.)

SHL filed its Answer on September 4, 2019, (dkt. 28), which prompted the Parties to exchange initial disclosures and documents: Plaintiff made initial disclosures on September 30, 2019, and SHL made initial disclosures on October 4, 2019, producing over 7,000 pages of documents along with it. (Ufkes Decl. ¶ 5.) SHL then answered Plaintiff's first discovery requests on October 24, 2019 and—after the Parties negotiated a protocol for electronically-stored information production and a protective order—produced another 2,100 pages of documents and electronically-stored information. (*Id.* ¶ 6.) Plaintiff then determined that third-party discovery practice would be necessary on ADP LLC, the timeclock vendor who created the biometric timeclocks used by SHL. (*Id.* ¶ 7.) Plaintiff served a subpoena to ADP on February 5, 2020, to which ADP initially responded on March 6, 2020. (*Id.*) Trying to keep the case on track

amid the COVID-19 pandemic, Class Counsel pursued ADP for several months to secure a fulsome production. (*Id.*) Plaintiff then served her second set of discovery requests to Defendant on August 28, 2020, to which Defendant responded on October 9, 2020, producing 170 more pages of documents. (*Id.* ¶ 8)

With written discovery substantially complete, both parties noticed depositions. Plaintiff noticed the depositions of a key IT consultant to SHL, as well as SHL's Rule 30(b)(6) representative, scheduled to occur on October 30, 2020, and November 6, 2020, respectively. (*Id.* ¶ 9) Defendant noticed Plaintiff's deposition to take place on November 17, 2020. (*Id.*) Plaintiff then served a subpoena for ADP's deposition, also set to take place in mid-November 2020. (*Id.*)

The Parties then returned to the table to attempt to negotiate a Settlement before expending more of the Parties' (and the Court's) resources in discovery. Class Counsel made clear that a resolution was possible, but they remained steadfast that any Settlement would have to adopt the structure of the leading settlements in the BIPA context—non-reversionary, with direct checks—and would have to provide Class Members significant monetary relief despite SHL's financial strain. (*Id.* ¶ 10.) The Parties engaged in several rounds of negotiation in the weeks leading up to the first-scheduled deposition, ultimately reaching an agreement on the Settlement's principal terms on October 29, 2020. (*Id.* ¶ 11.) After significant additional negotiations over the terms of the full Settlement Agreement, the Parties finally executed the Settlement, which this Court preliminarily approved on January 12, 2021. (*Id.*)

### C.    The Settlement Secures Excellent Relief for the Settlement Class

As detailed in Plaintiff's motion for preliminary approval, the relief to the Class is an excellent result. The Settlement creates a non-reversionary fund of $790,000 for the 790 current and former employees and independent contractors of SHL who make up the Class, not

including those who have already released their BIPA claims or who were union members while working for SHL. (Settlement §§ 1.23; 1.25.) What's more, this amount will not be parceled out only to those individuals who complete and submit claim forms, but instead will be sent directly to *every* Settlement Class Member—a rarity in privacy class actions. (*Id.* § 2.1.)

Aside from the monetary relief, the Settlement creates non-monetary benefits as well. SHL also stopped using its handprint-based timeclock system after this litigation was commenced. (*See id.* § 2.2) If SHL starts using any biometric-based timekeeping system again, the Settlement ensures that SHL will comply with BIPA going forward, including by obtaining employees' written consent, making BIPA-required disclosures, and establishing a retention policy for biometric data. Finally, the Settlement requires SHL to destroy all biometric data of all current and former employees in its possession. (*Id.*)

## III.    THE REQUESTED ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD ARE REASONABLE AND SHOULD BE APPROVED.

Rule 23 authorizes courts to "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In common fund settlements like this one, the attorneys' fee award is typically made as a share of the fund. The common fund doctrine is "based on the equitable notion that those who have benefited from litigation should share its costs." *Skelton v. General Motors*, 860 F.2d 250, 252 (7th Cir. 1988) (citation omitted). By awarding fees payable from the common fund created for the benefit of the entire class, the court spreads litigation costs proportionately among those who will benefit from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The Seventh Circuit has consistently directed district courts in common fund cases to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688,

692 (7th Cir. 2007); *see also In re Synthroid*, 264 F.3d at 719 (cautioning that "any method other than looking to prevailing market rates assures random and potentially perverse results"). Ultimately, "the district court's task when determining the appropriate class action attorneys' fee is 'to estimate the contingent fee that the class would have negotiated with the class counsel at the outset had negotiations with clients having a real stake been feasible.'" *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *1 (N.D. Ill. Feb. 27, 2015) (quoting *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011)).

Class Counsel took this case on a contingent basis. (Ufkes Decl. ¶ 12.) Now that Class Counsel has achieved the results they did for the Class, they respectfully request compensation of 35% of the fund after notice and administration costs are deducted,[3] for a total of $265,717.22. This amount is inclusive of the $6,249.96 in costs fronted by Class Counsel. (*Id.* ¶ 22; Declaration of David Fish ("Fish Decl."), attached hereto as Exhibit 3 ¶ 11.) This amount is well in line with what other Courts of this District have found a hypothetical *ex ante* bargain to be in BIPA cases. Indeed, that award accurately tracks Class Counsel's uncompensated outlay of time bringing the case and negotiating the Settlement: 35% of the fund reflects only a modest 1.33 multiplier on Class Counsel's lodestar. Accordingly, the requested amount should be granted.

A.    **Percentage-of-the-Fund Should be Used to Determine Fees Here**.

In the Seventh Circuit, district courts deciding common fund cases may choose one of two methods for awarding attorneys' fees: (1) percentage-of-the-fund or (2) lodestar approach. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500 (N.D. Ill. 2015). Under the percentage-of-the-fund approach, "plaintiffs' attorneys . . . petition the court to recover its fees" as a

---

[3]    Courts in the Seventh Circuit do not include notice and administration costs as part of the fund in making percentage-of-the-fund fee awards. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). Here, the Settlement Administrator expects Settlement Administration Expenses to total $30,807.92. (Ufkes Decl. ¶ 25.)

percentage of the total fund. *Florin v. Nationsbank of Ga. N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). In contrast, the lodestar approach requires district courts to determine the reasonable value of the services rendered and increase that amount by a multiplier that factors in various considerations. Under the lodestar approach, the court first determines a "reasonable hourly rate allowable for each attorney . . . involved in the case." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). Then, the court multiplies "the hours reasonably expended by the reasonable hourly rates" to produce the lodestar. *Id.* Finally, the court increases the lodestar by a multiplier that accounts for other relevant considerations, such as the attorneys' amount of risk in bringing the case or the complexity of the issues. *See id.* (holding that courts should consider from an *ex ante* perspective "what size risk the attorney assumed at the outset by taking this type of case").

While the court has discretion over whether to use the percentage-of-the-fund or lodestar approach, courts typically select a method by looking "to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek*, 311 F.R.D. at 501. The normal practice in consumer class actions "is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery." *Id.* Therefore, the percentage-of-the-fund approach best mirrors typical contingency agreements, and the vast majority of courts in the Seventh Circuit use it. *See Hale v. State Farm Mutual Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *7 (S.D. Ill. 2018) (quotation omitted) (noting that in common fund cases "the vast majority of courts in the Seventh Circuit" use the percentage-of-the-fund method); *see also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 814 (2010) ("Most federal judges choose to award fees by using the highly discretionary percentage-of-the-settlement method.").

A percentage-of-the-fund, contingent approach is what the class would have negotiated

with class counsel at the outset in a hypothetical *ex ante* bargain; in fact, it has been used to

determine a reasonable fee award in virtually every BIPA class action settlement in both federal

and state courts. *E.g.*, *Cornejo*, No. 18-cv-7018, dkt. 57; *Alvarado v. Int'l Laser Prods., Inc.*, No.

18-cv-7756, dkt. 70 (N.D. Ill. Jan. 24, 2020) (Pallmeyer, J.). In contrast, the lodestar approach

has never been used to evaluate fees in these cases, as far as counsel is aware, where the Class

received a monetary benefit.[4] Consequently, this Court should have no hesitation in applying the

percentage-of-the-recovery method here.

**B.     35% Is the Appropriate Fee Award Here**.

The Seventh Circuit has instructed district courts to award reasonable attorneys' fees, and

that "the measure of what is reasonable is what an attorney would receive from a paying client in

a similar case." *Montgomery v. Aetna Plywood*, 231 F.3d 399, 408 (7th Cir. 2000). "[I]n

consumer class actions . . . the presumption should . . . be that attorneys' fees awarded to class

counsel should not exceed a third or at most a half of the total amount of money going to class

members and their counsel." *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 235 (N.D. Ill.

2016) (citing *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014)); *see also* Herbert

Newberg & Alba Conte, *Newberg on Class Actions* § 15:83 (William B. Rubenstein ed., 5th ed.)

(noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any

common fund"). Courts consider, against that presumption, the fee awards made in similar cases,

the risks that the particular case presented, the quality of the legal work provided, the anticipated

work necessary to resolve the litigation, and the stakes of the case. *See Taubenfeld v. AON Corp.*,

415 F.3d 597, 600 (7th Cir. 2005) ("[A]ttorneys' fees from analogous class action settlements are

---

[4]     The one exception is *Carroll v. Crème de la Crème*, No. 2017-CH-01624, which produced no
monetary recovery for the class and instead provided credit monitoring.

indicative of a rational relationship between the record in this similar case and the fees awarded by the district court."); *see also In re Synthroid*, 264 F.3d at 721.

A hypothetical *ex ante* negotiation could well have resulted in an agreement higher than the 35% Class Counsel now seek, as Courts have frequently awarded higher percentages of the fund in BIPA cases like this one. *Sekura*, No. 2015-CH-16694 (BIPA case, awarding 40% of fund); *Sharrieff v. Raymond Mgmt. Co., Inc.*, No. 2018-CH-01496 (Cir. Ct. Cook Cnty.) (same); *Svagdis v. Alro Steel Corp.*, No. 2017-CH-12566 (Cir. Ct. Cook Cnty.) (same); *Zepeda v. Kimpton Hotel & Rest.*, No. 2018-CH-02140 (Cir. Ct. Cook Cnty.) (same). Other federal courts, including this Court, have awarded 35% of the fund in BIPA cases. *E.g.*, *Cornejo*, No. 18-cv-7018, dkt. 57; *Alvarado*, No. 18-cv-7756, dkt. 70.[5] Courts in the Seventh Circuit have awarded percentages of the fund higher than 35% in similar privacy cases. *Kolinek*, 311 F.R.D. at 503 (awarding 36% of fund in TCPA case). Accordingly, the requested award is more than appropriate and is what the class would have agreed to in an *ex ante* negotiation; indeed, dozens of state courts have awarded the same percentage. *See, e.g.*, *Brown*, No. 2019-CH-02576 (awarding 35% of the fund); *Bernal v. ADP*, No. 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) (same); *Barnes v. Aryzta*, No. 2017-CH-11312 (Cir. Ct. Cook Cnty. Nov. 13, 2020) (same).

The appropriateness of a 35% fee award here is further justified by (1) the substantial risk that Class Counsel took on in accepting the case, and (2) the excellent relief Class Counsel ultimately obtained for the Settlement Class.

---

[5] One court awarded 33.3% of the fund in a BIPA case, where the fund was substantially larger. *Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17-cv-8033, dkt. 103 (N.D. Ill. Aug. 20, 2019) (Kennelly, J.); *see Gehrich*, 316 F.R.D. at 235 ("[A]s the dollar value of the common fund increases, the percentage of the settlement awarded as attorney fees generally decreases.").

        1.      *This case presented serious obstacles to recovery, and Class Counsel litigated the case mindful of the possibility that the Class might recover nothing.*

In a hypothetical *ex ante* negotiation, it would be apparent to the client that a 35% contingent fee would be appropriate considering the significant risk Class Counsel took on in litigating a case mired in issues of first impression. (Ufkes Decl. ¶¶ 12–13.) Although these risks are inherent in any contingent-fee litigation, class actions especially, there are particularly acute risks in BIPA cases: as recently as 2015, there was no interpretation of any of the statute's material provisions. *See Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1106 (N.D. Ill. 2015) ("The BIPA was enacted in 2008, and to this date, the Court is unaware of any judicial interpretation of the statute."). By the time Plaintiff filed suit, the question of who could actually recover under the statute had finally been settled by the Illinois Supreme Court, *see Rosenbach*, 2019 IL 123186, but myriad other issues remain, including case-dispositive issues again pending before Illinois's highest court.

Accordingly, Class Counsel and the Settlement Class would have agreed on a 35% fee award in light of the risks. SHL, like other BIPA defendants, was expected to argue that Plaintiff's and the Settlement Class's BIPA claims were preempted by the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1 *et seq.*, a question currently being presented to the Illinois Supreme Court after it accepted a discretionary appeal. *McDonald v. Symphony Bronzeville Park LLC*, No. 126511 (Ill.). Moreover, SHL would have argued that many of the Class's claims were barred by a one- or two-year statute of limitations, also the subject of pending appeals in Illinois appellate courts. *See Tims v. Black Horse Carriers, Inc.*, No. 1-20-0563 (1st Dist.); *Marion v. Ring Container Techs., LLC*, No. 3-20-0184 (3d Dist.). Finally, the question of what data SHL actually collected and whether it constitutes "biometric identifiers" or "biometric information" as defined in the statute, 740 ILCS 14/10, is the subject of dispute in

existing BIPA cases and hasn't been resolved by the courts. *Cf. In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-CV-03747-JD, 2018 WL 2197546, at *2–3 (N.D. Cal. May 14, 2018) (denying motion for summary judgment on whether facial scans were biometric data regulated by BIPA). All of these risks were taken on by Class Counsel when they accepted this case, and it is appropriate to award 35% of the fund in light of those risks. *See In re Capital One Tel. Consumer Protection Act Litig*, 80 F. Supp. 3d 781, 805–06 (N.D. Ill. 2015) (adding 6% risk premium to attorneys' fees based on risk of non-payment when case was filed); *Kolinek*, 311 F.R.D. at 502 (same).

### 2. Class Counsel achieved an excellent result for the Class.

Given the large number of unresolved questions in BIPA cases, and the possibility that the Class would recover nothing at all, the relief secured by Class Counsel is exceptional. It is appropriate, too, for the Court to consider the actual result achieved—both as a function of the quality of Class Counsel's work, and because litigants often consider the ultimate degree of success in determining a fee schedule. *See Americana Art China, Co., Inc. v. Foxfire Printing & Packaging Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). As explained in Plaintiff's motion for preliminary approval, the monetary relief is excellent for BIPA cases to date and dwarfs other privacy settlements under similar statutes. Often, settlements under comparable privacy statutes settle for no meaningful relief to the class. *See In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of the Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkt. 314 (N.D. Cal. Nov. 15, 2020) (preliminarily approving settlement for injunctive relief only, in class action arising out of Facebook data

14

breach). This has been true in finally-approved settlements in the BIPA context too. *See Carroll*, No. 2017-CH-01624 (approving BIPA settlement for free credit monitoring to class members, but no cash relief).

But even among the leading BIPA settlements, this is excellent monetary relief for a class of this size. *E.g.*, *Chipman*, No. 18-LM-1073 ($800 per class member for 614-member class); *Kirby*, No. 2019-CH-09395 ($1,000 per class member for 69-member class); *Bryski v. Nemera Buffalo Grove*, No. 2018-CH-07264 (Cir. Ct. Cook Cnty. Oct. 5, 2020) ($1,000 per class member for 462-member class); *Guerrero v. Bob's Discount Furniture*, No. 2019-CH-1046 (Cir. Ct. Cook Cnty., Oct. 30, 2019) ($1,000 per class member for 235-member class). The Settlement Fund achieved here—constituting $1,000 per person for 790 class members—is a great result.

Finally, aside from the monetary relief, the non-monetary benefits created by the Settlement further support a 35% fee award. SHL has stopped collecting the biometric data of Class Members, agreed to destroy any biometric data in its possession and—if it starts using biometric timeclocks again—will comply with BIPA going forward. This non-monetary result is also properly considered for purposes of determining fees. *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973). Ultimately, the monetary and non-monetary relief recovered on behalf of the Settlement Class warrants approving the requested 35% of the monetary benefits of the Settlement as attorneys' fees.

### C.    A Lodestar Crosscheck Confirms the Reasonableness of the Requested Fees.

While the Settlement Class would not have agreed to calculate fees using the lodestar method, and the Court need not perform a lodestar "cross-check" to confirm the reasonableness of the fee award, analyzing the fee award under the lodestar method further confirms its reasonableness. *See Kolinek*, 311 F.R.D. at 500 ("[N]o Seventh Circuit case law suggests that a

percentage-of-the-fund approach will yield a reasonable result only where it satisfies a lodestar cross-check").

Class Counsel performed substantial work in this litigation, totaling nearly four hundred attorney and staff hours already.[6] The individuals primarily responsible for the case, along with their years of experience, rates and hours worked are provided in the Declarations of Schuyler Ufkes and David Fish. (Ufkes Decl. ¶ 20; Fish Decl. ¶ 11.) As those charts demonstrate, the value of Class Counsel's services to the Class amounts to $183,620.00 through the present. (*Id.*)

A lodestar analysis is properly based on Class Counsel's current hourly rates. *See Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016). The rates charged by attorneys at Edelson PC and the Fish Law Firm PC correlate to their respective experience and are at or below the average rates of attorneys with similar backgrounds and experience practicing in the Chicago legal market. Edelson PC's rates have been consistently approved by courts in the Seventh Circuit, as well as in federal courts across the country. *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747-JD, 2021 WL 757025, at *12 (N.D. Cal. Feb. 26, 2021); *Barnes v. Arzyta, LLC*, No. 1:17-cv-07358, 2019 WL 277716 at *4 (N.D. Ill. 2019) (finding Edelson PC's rates "reasonable given the market rate that hourly clients are willing to pay, judicial approval of their rates, and their level of reputation and expertise in the area"); *Goodman v. Hangtime, Inc.*, No. 14-cv-01022, dkt. 124 (N.D. Ill. Sept. 29, 2015) (granting Edelson PC's fee request in full, the reasonableness of which was demonstrated under the lodestar method). Edelson PC's experience and expertise in consumer class action litigation is further detailed in its

---

[6] Class Counsel anticipate expending at least an additional 40 hours of attorney and staff time to see this matter through final approval and the distribution of settlement payments to the class, totaling an additional lodestar of approximately $16,000.00. (Ufkes Decl. ¶ 18.) This additional lodestar includes the estimated time required for Class Counsel to file a final approval motion, prepare for and attend the Final Fairness Hearing, contend with any potential objectors, and handle any issues related to administration of the Settlement. (*Id.*)

Firm Resume, attached as Exhibit 2-A to the Ufkes Declaration. Finally, the Fish Law Firm's rates are also reasonable and reflect its attorneys' expertise. (*See* Fish Decl.)

As the declarations reflect, the current value of Class Counsel's services totals $183,620.00. (*Id.* ¶ 11; Ufkes Decl. ¶ 20.) As noted above, in Class Counsel's experience, seeing the Settlement through to final approval—addressing class member questions, drafting a final approval brief, and responding to any objections—will require an additional lodestar of approximately $16,000. (Ufkes Decl. ¶ 18.) Class Counsel's base lodestar for the time spent litigating this case and securing the Settlement, and an anticipated additional lodestar of $16,000 to see the Settlement through final approval, totals $199,620.00. (*Id.* ¶¶ 16–18, 20.) Class Counsel has also incurred unreimbursed expenses of $6,442.71, which are encompassed in the attorneys' fee request. (*Id.* ¶ 22; Fish Decl. ¶ 11.)

Calculating Class Counsel's base lodestar amount is only one part of the inquiry, however, in determining a reasonable fee award under this approach. The base lodestar amount is increased by a "multiplier . . . designed to reflect the fact that, no matter how many hours were invested, there was, at the outset, the possibility of no recovery." *Harman*, 945 F.2d at 976. A multiplier, accordingly, should be added to reflect the risk that Class Counsel faced in undertaking the litigation, which is discussed above. *See id.* Typically, courts apply a risk multiplier of between 1 and 4. *See* Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 14:6 (William B. Rubenstein, 4th ed.).

Class Counsel requests a total of $265,717.22 in attorney fees from the Settlement Fund, which amounts to a multiplier on its base lodestar of 1.33. This multiplier is on par with multipliers awarded in similar cases and thus confirms the reasonableness of the 35% of the common fund requested.

## IV.     THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARD.

The Settlement Agreement also provides for an incentive award of $5,000 to Plaintiff Sonia Lopez-McNear for serving as class representative. Incentive awards are appropriate in class actions to compensate individuals for stepping up to protect the interests of a broader class, spending their own time to achieve benefits for the class as a whole. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, Plaintiff Lopez-McNear's participation was critical to the case's ultimate resolution. Ms. Lopez-McNear's willingness to commit time to this litigation and undertake the responsibilities involved in representative litigation resulted in a substantial benefit to the class and fully justifies the requested incentive award. (Ufkes Decl. ¶¶ 26–29.) Throughout the case, Ms. Lopez-McNear expended time and effort conferring with Class Counsel, investigating her and her fellow class members' claims, providing information to Class Counsel to prepare the pleadings, reviewing and approving her MIDP responses, and ultimately reviewing and approving the Settlement before signing it, all of which were necessary to secure the $790,000 Settlement Fund for the Class. (*Id.* ¶ 27.) Had the Parties not reached a resolution, Ms. Lopez-McNear was prepared to sit for her deposition (after a number of scheduled defense depositions). (*Id.*) She was also willing to attach her name to this litigation against her former employer and allow it to be transmitted via Class notice to more than seven hundred people, subjecting herself to "scrutiny and attention" which is "certainly worth some remuneration." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 601 (N.D. Ill. 2011).

As a monetary matter, Ms. Lopez-McNear's requested incentive award is eminently reasonable: it's equal to the amounts awarded to plaintiffs in numerous other privacy cases, including BIPA cases, *see Brown*, No. 2019-CH-02576 ($5,000 award in BIPA case); *Barnes*,

2017-CH-11312 (same); *Gehrich*, 316 F.R.D. at 239 (noting that courts in the Northern District of Illinois "recently and routinely granted $5,000 incentive awards to named plaintiffs in TCPA cases"), and a fraction of the amounts often awarded in comparable class settlements in Illinois and elsewhere. *See Dixon*, No. 17-cv-8033, dkt. 103 (granting $10,000 incentive award in BIPA case); *Bernal*, No. 2017-CH-12364 (granting $7,500 incentive award in BIPA case); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1348 (2006) (finding that "[t]he average award per class representative was $15,992"); *Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award for class representative), *Spano v. Boeing Co.*, No. 06-cv-743-NJR-DGW, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016) (approving incentive awards of $25,000 and $10,000 for class representatives). Plaintiff Lopez-McNear's request is more than in line with other incentive awards and should be granted.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff Sonia Lopez-McNear respectfully requests that this Court enter an order (1) granting Class Counsel's request for an award of attorneys' fees and expenses in the amount of $265,717.22; (2) awarding Plaintiff Lopez a $5,000.00 incentive award; and (3) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**SONIA LOPEZ-MCNEAR,** individually and on behalf of the Settlement Class,

Dated: March 23, 2021          By: /s/Schuyler Ufkes

Jay Edelson
jedelson@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes

sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

David J. Fish
dfish@thefishlawfirm.com
THE FISH LAW FIRM
200 East 5th Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590