**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| SONIA LOPEZ-MCNEAR, individually and on behalf of the Settlement Class, | Case No. 19-cv-2390 |
| *Plaintiff,* | Hon. Rebecca R. Pallmeyer |
| v. | |
| SUPERIOR HEALTH LINENS, LLC, a Wisconsin limited liability company, | |
| *Defendant.* | |

## PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................3

    A.   Nature of the Litigation ...............................................................3

    B.   The Claims.....................................................................................4

    C.   Procedural History .......................................................................5

III.  TERMS OF THE SETTLEMENT AGREEMENT ..............................6

    A.   Class Definition ............................................................................6

    B.   Monetary Relief ...........................................................................7

    C.   Injunctive and Prospective Relief ...............................................8

    D.   Attorneys' Fees and Incentive Award .........................................8

    E.   Release ...........................................................................................8

IV.   THE CLASS NOTICE FULLY SATISFIED DUE PROCESS ...................9

V.    THE SETTLEMENT WARRANTS FINAL APPROVAL .......................10

    A.   The Class Representative and Class Counsel have Adequately Represented the Class........................................................................................11

    B.   The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations..................................................................................13

    C.   The Settlement Treats Class Members Equally..............................14

    D.   The Relief Secured for the Settlement Class is Adequate and Warrants Final Approval.................................................................................15

        1.   *The Relief Provided by the Settlement is Outstanding*............15

        2.   *The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval*...........................17

        3.   *The Method of Distributing Relief to the Settlement Class Members is Effective and Supports Final Approval* ....................................20

4.    *The Terms of the Requested Attorneys' Fees are Reasonable* ............... 21

E.    **The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement** ................................................................... 22

1.    *The Reaction of the Class Favors Approval* ............................................ 22

2.    *Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval* ............................................... 22

3.    *The Settlement Raises No Red Flags* ...................................................... 24

VI.    **CONCLUSION** ................................................................................................ 25

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................... 9

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ......................................................... 14

**United States Circuit Court of Appeals Cases**

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) .......................................... 24

*Gascho v. Glob. Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016) .......................................... 16

*Miller v. Sw. Airlines Co.*,
    926 F.3d 898 (7th Cir. 2019) ............................................ 7

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) ................................... 19, 23

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) .......................................... 10

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .......................................... 10

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .......................................... 11

*Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*,
    309 F.3d 978 (7th Cir. 2002) .......................................... 10

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) .................................. *passim*

**United States District Court Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28 2012) .................... 10, 22

*Charvat v. Valente*,
    No. 12-CV-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) .................... 11

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
   No. 18-cv-7018 (N.D. Ill) ................................................................................. 21

*Fernandez v. Kerry, Inc.*,
   No. 17-CV-08971, 2020 WL 7027587 (N.D. Ill. Nov. 30, 2020) ...................... 7

*Goldsmith v. Tech. Sols. Co.*,
   No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ......................... 17

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ........................................................ 15, 19

*In re Facebook Biometric Info. Privacy Litig.*,
   No. 15-CV-03747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021) ............... 23

*In re Google LLC Street View Elec. Commc'ns Litig.*,
   No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ....... 2, 16

*In re TikTok Consumer Privacy Litig.*,
   No. 20-cv-4699 (N.D. Ill.) .......................................................................... 2, 16

*In re NCAA Student-Athlete Concussion Injury Litig.*,
   332 F.R.D. 202 (N.D. Ill. 2019) ..................................................................... 11

*McDaniel v. Qwest Commc'ns Corp.*,
   No. CV 05 C 1008, 2011 WL 13257336 (N.D. Ill. Aug. 29, 2011) ................ 22

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .................... 22, 23

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................... 9, 17. 23

*Schulte v. Fifth Third Bank*,
   No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) ..................... 14

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ............... 11, 12, 13

**Illinois Supreme Court Cases**

*McDonald v. Symphony Bronzeville Park, LLC*,
   163 N.E.3d 746 (Ill. 2021) ............................................................................. 18

*Rosenbach v. Six Flags Ent. Corp.*,
   2019 IL 123186 ...............................................................................................23

**Illinois Appellate Court Cases**

*Rottner v. Palm Beach Tan, Inc.*,
   2019 IL App (1st) 180691-U ...........................................................................23

*Sekura v. Krishna Schaumburg Tan*, *Inc.*,
   2018 IL App (1st) 180175 ...............................................................................23

*Marion v. Ring Container Technologies, LLC*,
   No. 3-20-0184...................................................................................................18

*McDonald v. Symphony Bronzeville Park LLC*,
   2020 IL App (1st) 192398 ........................................................................18, 23

*Tims v. Black Horse Carriers, Inc.*,
   No. 1-20-0563...................................................................................................18

**Illinois Circuit Court Cases**

*Carroll v. Crème de la Crème, Inc.*,
   2017-CH-01624.............................................................................................2, 16

*Edmond v. DPI Specialty Foods*,
   2018-CH-09573.............................................................................................3, 16

*Marshall v. Lifetime Fitness*,
   2017-CH-14262 ............................................................................................2, 16

*Licata v. Facebook, Inc.*,
   2015-CH-05427................................................................................................23

*Svagdis v. Alro Steel Corp.*,
   No. 2017-CH-12566 .........................................................................................21

*Watts v. Aurora Chicago Lakeshore Hosp.*,
   2017-CH-1275..............................................................................................3, 16

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
   No. 2018-CH-02140 (Cir. Ct. Cook Cnty. Dec. 5, 2018)..................................21

**Statutory Provisions**

29 U.S.C. § 141 ......................................................................................................7

735 ILCS 14...........................................................................................................*passim*

820 ILCS 305.................................................................................................................18

Fed. R. Civ. P. 23.............................................................................................*passim*

**<u>Miscellaneous Authority</u>**

Federal Judicial Center,
    *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide*,
    (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf ...............9

Illinois House Transcript, 2008 Reg. Sess. No. 276.......................................................4

William B. Rubenstein,
    4 *Newberg on Class Actions* ......................................................................20, 21

## I.    INTRODUCTION

Plaintiff Sonia Lopez-McNear ("Plaintiff") filed this class action against her former employer, Defendant Superior Health Linens, LLC ("SHL") for violating the Biometric Information Privacy Act ("BIPA") by using a hand-scanning timeclock to collect its employees' biometric data without their consent and without creating (or abiding by) a biometric retention policy. After over a year of active litigation, the parties reached a Settlement, which the Court preliminarily approved on January 12, 2021. The Settlement provides the best of what a class action should offer: substantial monetary relief, distributed equitably without having to file a claim, and an expansive direct notice program. Now, with notice to the Class completed and not a single objection or opt out received, Plaintiff submits this excellent Settlement for final approval.

The Seventh Circuit has been rightly skeptical of class action settlements where class members receive little relief, or where a complicated claims process would deter would-be claimants to the benefit of the attorneys. This Settlement provides exactly the opposite. It creates a non-reversionary Settlement Fund of $790,000.00, which will be distributed to each and every Settlement Class Member for whom a valid address is available via direct checks, and without the need for Class Members to submit claims.[1] After fees and costs are paid, each Class Member will receive a check for approximately $620. On top of that, the Settlement provides strong prospective relief: SHL has agreed to delete all biometric data of current and former employees and comply with the law if SHL ever uses biometric timeclocks again.

After preliminary approval, direct notice was disseminated to the Settlement Class on

---

[1]    The capitalized terms used in this motion are those used in the Stipulation of Class Action Settlement (the "Settlement" or "Agreement"), attached hereto as Exhibit 1.

February 9, 2021 in accord with the Court's order via email or U.S. mail, and reached over 87% of the Settlement Class. The Settlement Website has been available 24/7 since January 18, 2021 with long-form notice and key documents, including the Settlement Agreement itself. Class Counsel filed their fee brief on March 23, 2021, which was also posted to the Settlement Website. By the Objection/Exclusion deadline of April 6, 2021, not a single member of the 789-person Settlement Class asked to be excluded or objected.[2]

This complete lack of opposition is no surprise, considering the amount of relief provided to *every* Class Member and how favorably this Settlement compares against other privacy class action settlements. Far too many privacy class actions settle without monetary relief to the class and resolve claims for only *cy pres* relief. *See, e.g.*, *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of a federal privacy statute where $10,000 in statutory damages were available per claim). Indeed, even some settlements under BIPA have provided zero monetary relief to the class and only given class members an offer of free credit monitoring. *See Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty., Ill. 2018)*.* Other finally-approved BIPA settlements have provided monetary relief have paid lesser amounts and *only* to those who submit claims. *E.g.*, *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Ctny. July 30, 2019) (granting final approval to settlement providing $270 only to those individuals who filed claims); *In re TikTok Consumer Privacy Litig.*, No. 20-cv-4699, dkt. 132

---

[2]    To resolve any confusion, Plaintiff's earlier settlement papers stated the class size was 790, but one class member was initially counted twice by SHL. (*See* dkt. 57-4 at ¶ 4.) Not that it affects the Settlement in any material way—other than each Class Member receiving about a dollar more than originally anticipated—but the correct class size is 789.

(N.D. Ill.) (objector noting that proposed settlement would resolve BIPA claims for less than $20 on claims-made basis, even with a massively deficient notice program). In stark contrast, the leading BIPA settlements in the employer context distribute cash relief directly to the entire class without a claims process. The Settlement here is an excellent example of the last category, and its payments to Class Members falls in line with—and in many instances exceeds—those that came before it. *E.g.*, *Edmond v. DPI Specialty Foods*, 2018-CH-09573 (Cir. Ct. Cook Cnty.) (direct checks sent to all class members for $604.65); *Watts v. Aurora Chicago Lakeshore Hosp. LLC*, 2017-CH-12756 (Cir. Ct. Cook Cnty.) (direct checks sent to all class members for $612.13).

For these reasons, and as detailed below, this is an exceptional Settlement. The factors to be considered under Rule 23(e)(2) when determining whether to grant final approval to a class settlement weigh in favor of approving this one. Thus, the Court can appropriately grant final approval.

## II.     BACKGROUND

Though Plaintiff has laid out the background of this case in her preliminary approval motion and motion for attorneys' fees (*see* dkts. 57, 62)*,* it is set forth in brief below for ease of reference.

### A.     Nature of the Litigation

BIPA was passed after the bankruptcy of a company called Pay By Touch, which had partnered with gas stations and grocery stores in Illinois to install checkout terminals that used fingerprint scanners linked to bank accounts to make purchases. (Complaint ("Compl.") ¶¶ 12–13.) When Pay By Touch's parent company declared bankruptcy at the end of 2007, it began shopping its database of Illinois consumers' fingerprints as an asset to its creditors. (*Id.* ¶ 13.)

3

This decision was met with public backlash, and while a bankruptcy court ultimately ordered the destruction of the database, the Illinois legislature recognized the "very serious need" to protect Illinois citizens' biometric data. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276. Therefore, in 2008, the Illinois legislature passed BIPA, which makes it unlawful for any private entity to collect and store consumers' biometric data unless it first (i) obtains their informed written consent, (ii) provides details related to the data's purpose and storage, and (iii) establishes a publicly-available retention and destruction policy. *See id.*; 740 ILCS 14/5, 14/15. The statute also prohibits companies from disclosing or disseminating biometric data except with consent or under limited circumstances not at issue here. 740 ILCS 14/15(d). If a company fails to comply with BIPA's provisions, the statute provides for a civil private right of action allowing consumers to recover $1,000 for negligent violations or $5,000 for willful violations, plus costs and reasonable attorneys' fees. *See id.* § 14/20.

    **B.    The Claims**

    Plaintiff brought this suit against her former employer, SHL, alleging that it violated her and her fellow employees' rights under BIPA by using a biometric timekeeping system to monitor its Illinois employees' working hours without complying with the requirements of the law. She alleges that while working for SHL, the company required her—and all other new employees—to scan their hands to enroll them in SHL's employee handprint database, and subsequently their handprints in order to "punch" in to or out of work. (*See* Compl. ¶¶ 22–23, 29–30.) Plaintiff alleges that SHL violated section 15(a) of BIPA by (i) failing to develop a data-retention policy and guidelines for permanently destroying biometric data, (ii) failing to publicly disclose any such policy, and (iii) failing to comply with any such policy. (*Id.* ¶¶ 25, 32, 44, 51.) Plaintiff further alleges that SHL violated section 15(b) of BIPA by collecting, using, and storing

its employees' biometric data without obtaining written informed consent. (*Id.* ¶¶ 24, 33, 44, 48–50.) Plaintiff filed this lawsuit to vindicate her rights, and the rights of the Settlement Class, under BIPA.

### C. Procedural History

Plaintiff filed this suit in the Circuit Court of Cook County, on February 28, 2019. Soon after, SHL removed the case to the Northern District of Illinois. The Parties then began discussing the possibility of an early resolution and jointly moved to stay the case pending their July 22, 2019 mediation with the Honorable Eileen M. Brewer (Ret.) at JAMS in Chicago. (*See* dkt. 17.) To aid in their settlement discussions, SHL provided Plaintiff's counsel with financial information and its potentially relevant insurance policies prior to the mediation. The Parties, however, were unable to reach a resolution at the mediation.

After the Court lifted the stay, Defendant answered the Complaint, (dkt. 28), and the Parties commenced written discovery, which included serving MIDP disclosures, exchanging thousands of pages of documents in written discovery, and Plaintiff issuing a subpoena to ADP, LLC—the provider of the alleged biometric timeclocks at issue—for documents. (Declaration of Schuyler Ufkes ("Ufkes Decl."), attached hereto as Exhibit 2, at ¶ 3.) Once written discovery was near complete, Plaintiff noticed and scheduled the depositions of Defendant's IT consultant and its Rule 30(b)(6) representative, and Defendant noticed and scheduled Plaintiff's deposition. (*Id.*) Plaintiff also issued a subpoena to ADP for a deposition. (*Id.*)

Meanwhile, beginning in early September of 2020, the Parties began to revisit the possibility of a class-wide resolution. (*Id.* ¶ 4.) In order to aid in their discussions, the Parties exchanged additional information related to the size and composition of the putative class—i.e., how many SHL employees were union members and how many already executed a settlement

agreement with SHL releasing their BIPA claims—and Plaintiff's counsel reviewed SHL's financial information. (*Id.*) Following considerable arm's-length negotiations, and on the eve of the first-scheduled deposition, the Parties reached agreement on the material terms of the Settlement on October 29, 2020. (*Id.*) Over the next several weeks, the Parties negotiated the final terms of the full, written Settlement Agreement now before the Court. (*Id.*) After the Parties fully executed the Settlement Agreement, Plaintiff promptly moved for preliminary approval of the Settlement, which the Court granted on January 12, 2021. (*See* Prelim. Approval Order, dkt. 60.)

## III. TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Class Action Settlement Agreement, (dkt. 65-1), and are briefly summarized here:

A. **Class Definition:** In the Preliminary Approval Order, the Court certified a Settlement Class of "[a]ll current and former employees (including temporary employees provided by staffing services) of Superior Health Linens, LLC, who used a hand scanning timeclock at a facility owned or operated by Superior Health Linens, LLC in the State of Illinois between February 28, 2014 and [January 12, 2021]." (Dkt. 60, ¶ 3.) Excluded from the Settlement Class are: (a) persons who were or are in the bargaining units of any union, including the Chicago and Midwest Regional Joint Board, Workers United an SEIU affiliate, while working at Superior Health Linens, LLC; (b) persons who executed a settlement agreement and release with Superior Health Linens, LLC releasing and/or waiving their BIPA claims; (c) any Judge or Magistrate presiding over this action and members of their families; (d) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest; (e) persons who properly execute and file a

6

timely request for exclusion from the Settlement Class; and (f) the legal representatives, successors, heirs or assignees of any such excluded persons.[3] (*Id.*)

    **B.**     **Monetary Relief:** Defendant has established a non-reversionary Settlement Fund of $790,000.00 for the benefit of the Settlement Class. From the fund, each and every Settlement Class Member for whom a valid address is available will have a check mailed to them.[4] Those funds will be distributed *pro rata* after payment of notice costs, administrative expenses, and any attorneys' fees and incentive award approved by the Court. (Agreement § 1.26.) Should the Court approve Plaintiff's requested attorneys' fees and incentive award, each Settlement Class Member can expect to receive a check for approximately $620.[5]

---

[3]     Union members are excluded from the Settlement Class given the uncertainty surrounding the preemption of BIPA claims by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, *et seq.*, and the possibility that such claims would need to be resolved through the grievance and arbitration procedures set forth in the collective bargaining agreement between SHL and the unions. *See Miller v. Sw. Airlines Co.*, 926 F.3d 898, 903 (7th Cir. 2019); *e.g.*, *Fernandez v. Kerry, Inc.*, No. 17-CV-08971, 2020 WL 7027587, at *4–5 (N.D. Ill. Nov. 30, 2020) (holding that the LMRA preempts plaintiffs' BIPA claims). In any event, these union members are not excluded from the class and therefore retain any BIPA claims they may have. Individuals who signed a settlement agreement or written release with SHL releasing or waiving their BIPA claims are similarly excluded from the Settlement Class.

[4]     Of the 789 names on the class list, 782 include a mailing address. Of those, the Settlement Administrator identified 92 addresses that are undeliverable by the USPS and for which no valid address could be found via skip-tracing. (Declaration of Brian Smitheman ("Smitheman Decl."), attached hereto as Exhibit 3 ¶ 12.) The Settlement Administrator will hold settlement payments for any class members without a deliverable address in the event they reach out with an updated address before residual funds are distributed to *cy pres*.

[5]     The Settlement Administrator estimates that the total Settlement Administration Expenses will be $30,807.92. (Smitheman Decl. ¶ 15.) If the Court approves all of the pending motions, payments to Class Members will be approximately $620: the fund amount of $790,000.00, less Plaintiff's requested fees of $265,717.22, less Settlement Administration Expenses of $30,807.92, and less an incentive award of $5,000.00, is $488,474.86. That amount will be divided equally among the 789 Settlement Class Members. With these final numbers, the estimated $620 payments are just $5.00 less than previously estimated (dkt. 62), but still an excellent result nonetheless.

If any checks remain uncashed within ninety (90) days of issuance, the check will be void. (Agreement § 2.1(b).) Any residual funds will be distributed as *cy pres* to the Electronic Privacy Information Center and Legal Aid Chicago, earmarked to support the Workers' Rights Practice Group, in equal amounts (i.e., 50% each), subject to the Court's approval of one or both recipients.

C.    **Injunctive and Prospective Relief:** Defendant stopped using biometric timeclocks at its Illinois locations shortly after Plaintiff filed this lawsuit. However, should SHL ever resume collecting or storing biometric data, the Settlement requires that it first obtain employees' informed consent to do so, post a publicly-available retention policy, and otherwise comply with BIPA going forward. (Agreement § 2.2.) SHL has also agreed to destroy all biometric data collected from its former employees. (*Id.*)

D.    **Attorneys' Fees and Incentive Award:** Defendant has agreed to pay reasonable attorneys' fees in an amount determined by this Court, to be paid from the Settlement Fund. (*Id.* § 8.1). Plaintiff's counsel voluntarily agreed to limit this request to 35% of the Settlement Fund, (*id.*), which they made by a separate motion on March 23, 2021, (*see* dkt. 62). Defendant has also agreed to pay Plaintiff an incentive award from the Fund in the amount of $5,000, subject to Court approval, in recognition of her efforts in serving as Class Representative. (Agreement § 8.2; *see* dkt. 62, at 18-19.)

E.    **Release:** In exchange for the relief described above, the Settlement Class Members will release SHL and its agents from any and all claims relating to the alleged collection and possession of Settlement Class Members' biometric data through the use of hand scanning timeclocks at SHL's Illinois facilities. (Agreement §§ 1.18, 1.19, 1.20, 1.28, 3.1.)

## IV.     THE CLASS NOTICE FULLY SATISFIED DUE PROCESS

Prior to granting final approval to this Settlement, the Court must consider whether the class members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011) ("*Schulte I*"). The "best notice practicable" does not necessarily require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process. In general, a notice plan that reaches at least 70% of class members is considered reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

The Court-approved Notice Plan here called for direct notice to all members of the Settlement Class via email or First-Class U.S. Mail, and the creation of a Settlement Website. (Dkt. 60, ¶ 9; Agreement § 4.1.) Pursuant to the Notice Plan, SHL provided Class Counsel and Heffler Claims Group—the professional Settlement Administrator appointed by the Court—with a class list containing the names of all 789 members of the Settlement Class, as well as their mailing addresses and email addresses (to the extent available). (Smitheman Decl. ¶ 8.) Once provided, the Settlement Administrator updated the U.S. Mail addresses through the National Change of Address database to ensure the most up-to-date addresses as possible. (*Id.* ¶ 10.) The Settlement Administrator then sent the Court-approved direct notice to all class members with a mailing address or email address. (*Id.*) This notice was successfully delivered to 690 Settlement Class Members, a total of 87.4% of the Settlement Class. (*Id.* ¶¶ 11–12.) These summary notices also directed members of the Settlement Class to a Settlement Website,

www.SHLBiometricSettlement.com, where they could—and are still able to—access the "long form" notice and important court filings, including Plaintiff's Motion and Memorandum of Law for Attorneys' Fees, Expenses, and Incentive Award, see deadlines and instructions on how to appear at the Final Approval Hearing telephonically, and get answers to frequently asked questions. (*Id.* ¶ 7; Agreement § 4.1(d).)

Overall, the Notice Plan was highly successful and exceeds all that is required for due process.

## V.      THE SETTLEMENT WARRANTS FINAL APPROVAL

When analyzing class action settlements, "the law quite rightly requires more than a judicial rubber stamp[.]" *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). To that end, the Seventh Circuit has established "the district judge as a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (internal quotation marks omitted).

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval . . . after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012); *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate.

Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

As the Advisory Committee for the 2018 amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns[,]" the Court should also take into account the factors set out by the Seventh Circuit. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *accord Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)*.* Courts in the Seventh Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019); *Charvat v. Valente*, No. 12-CV-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019).

The following discussion of the factors set out in Rule 23(e)(2) and their corresponding factors set out by the Seventh Circuit demonstrates that the Settlement is fair, reasonable, adequate, and deserving of final approval.

### A. The Class Representative and Class Counsel have Adequately Represented the Class.

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment.

This factor is generally satisfied where the named plaintiff participated in the case diligently, and class counsel fought vigorously in the litigation. *Snyder*, 2018 WL 4659274, at *3. In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *Id.* at *4. This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *See Wong*, 773 F.3d at 863.

The knowledge and negotiating position, vigor, participation, and conduct of the Class Representative and Class Counsel have not changed since this Court granted preliminary approval. (Dkt. 60.) Plaintiff Lopez-McNear's interests have remained aligned with the Class through the Notice Process and preparation for Final Approval. Without Ms. Lopez-McNear stepping up to represent the class and taking on these tasks as the lead plaintiff, the relief secured for the Settlement Class wouldn't have been possible. Given her efforts and aligned interest with the class, there can be no doubt that Ms. Lopez-McNear has only acted in the best interest of the Settlement Class and has adequately represented them.

Likewise, Class Counsel worked vigorously to protect the interests of the Class and ensure that the Class was represented beyond the simple "adequate" measure. First, the considerable amount of investigation and discovery completed by Plaintiff's counsel ensured that they had adequate information to assess the strength of the case and engage in settlement discussions. In particular, Class Counsel has conducted substantial investigation into the ADP technology used by Defendant to allegedly collect biometric data from the Class, the Parties all but completed formal written discovery (which resulted in SHL producing over 9,000 pages of responsive documents), and Plaintiff obtained the financial documentation necessary from SHL

to confirm its financial position. (Ufkes Decl. ¶ 3.) The facts underlying Plaintiff's allegations in this case—though by no means their legal import—are now substantially undisputed: Defendant used a biometric time clock with a hand scanner to verify its employees' identities without complying with BIPA. Furthermore, the Parties conducted informal discovery concerning the size and composition of the class. (*Id.* ¶ 4.) This combination of formal and informal discovery has amounted to a clarity of issues in the case that is sufficient for the Parties to assess their negotiating positions (based upon the litigation to date, the anticipated outcomes of fact and expert discovery, and additional motion practice) and evaluate the appropriateness of any proposed resolutions.

Therefore, the Settlement unequivocally meets the Rule 23(e)(2)(C) requirement.

### B. The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations

The second factor in Rule 23(e)(2) requires the court to consider whether the proposed settlement is the result of arm's-length negotiations. *See Wong*, 773 F.3d at 864. The record here demonstrates nothing but good-faith, non-collusive bargaining between the Parties. After an unsuccessful mediation early in the case, followed by a year of active litigation and formal discovery, the Parties revisited settlement negotiations in September 2020 at a time when four depositions were soon approaching. (Ufkes Decl. ¶ 4.) The Parties engaged in multiple rounds of vigorous negotiations and exchanged information about the size and composition of the class, as well as SHL's financial position, before ultimately reaching agreement on the principal terms of the Settlement on October 29, 2020—just before significant resources would be expended on completing discovery. (*Id.*) The arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, provides significant cash payments to Settlement Class Members, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4

13

(approving settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"). For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered") (internal quotation marks omitted).

### C. The Settlement Treats Class Members Equally.

Next, Rule 23(e)(2) requires the proposed settlement to treat class members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Given that the Settlement Class here has nearly identical BIPA claims, the Settlement treats each of them identically. Defendant has contributed $1,000.00 per member of the Settlement Class to the Settlement Fund, from which each Settlement Class Member will receive a single, *pro rata* cash payment after fees and costs are paid. (Agreement §§ 1.25, 1.26, 2.1); *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund").

The prospective relief under this Settlement also treats Settlement Class Members identically, as SHL has agreed to destroy each Settlement Class Member's biometric data. (Agreement § 2.2.) Further, in terms of the release, each Settlement Class Member will be releasing the same BIPA claims against SHL. (*Id.* §§ 1.18, 1.28, 3.1.) Because the Settlement treats each member of the Settlement Class equally, this factor is well satisfied.

**D.** **The Relief Secured for the Settlement Class is Adequate and Warrants Final Approval.**

The final and most important factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 instructs courts to take into account several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; and (iii) the terms of any proposed award of attorneys' fees, including timing of payment. *Id.*[6] This analysis necessarily encompasses two of the Seventh Circuit's factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation." *Wong*, 773 F.3d at 863. Because the first Seventh Circuit factor "[is the] most important factor relevant to the fairness of a class action settlement[,]" it is critically important for a settlement to meet this standard. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (internal quotations omitted). This Settlement does so.

### 1. *The Relief Provided by the Settlement is Outstanding.*

The benefits of this Settlement represent an excellent recovery for the class and simply excel when compared to other class action settlements, including those under BIPA. After fees and costs are paid, each Settlement Class Member will be paid approximately $620 from the $790,000 Settlement Fund. At trial, Settlement Class Members theoretically stood to recover statutory damages of $1,000 for a negligent violation of the statute or $5,000 for an intentional or reckless violation. 740 ILCS 14/20.

---

[6] The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is not applicable here as the written Settlement Agreement provided to the Court represents the entirety of the proposed Settlement. (Ufkes Decl. ¶ 5.)

Settlements in other statutory privacy class actions don't come near this amount, either in terms of raw numbers or percentage of available relief. Such settlements all too often secure *cy pres* relief without any individual payments to class members. *See, e.g.*, *In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11–14 (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of a federal privacy statute, where $10,000 in statutory damages were available per claim). This has been true in finally-approved settlements in the BIPA context as well, where some settlements have provided only credit monitoring and *no* monetary relief for the class. *See Carroll*, 2017-CH-01624.

Even narrowing the comparison to the BIPA settlements in which class members actually received monetary relief, this Settlement excels. Many BIPA settlements have required class members to file a claim to receive payment, which denies the vast majority of class members that don't file claims any monetary relief at all. *E.g.*, *Marshall*, 2017-CH-14262 (providing $270 only to those individuals who filed claims, along with credit monitoring); *see also In re TikTok Consumer Privacy Litig.*, No. 20-cv-4699, dkt. 122 (proposed class counsel predicting a 1.5% claims rate). This Settlement is excellent in that relief sent to *every* Class Member is superior to those that only pay the fraction of people who take the time to fill out a claim form. *See, e.g.*, *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) (crediting expert testimony that response rates in claims-made class action settlements "generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent[.]"). And the net amount paid to each Settlement Class Member, approximately $620 each, surpasses the amounts paid in many other leading BIPA settlements that similarly send direct payments to class members. *E.g.*, *Edmond*, 2018-CH-09573 (direct checks sent to all class members for $604.65); *Watts*, 2017-CH-12756

16

(direct checks sent to all class members for $612.13). Put simply, this is a remarkable result using any measure.

Aside from the monetary relief, the non-monetary benefits created by the Settlement are significant. Defendant has stopped using biometric technology at all of its locations in Illinois— no doubt a result of Plaintiff filing this lawsuit—but should it ever resume using biometric technology, the Settlement requires that it comply with BIPA going forward, including by obtaining BIPA-compliant written releases from each of its Illinois employees, making all BIPA-mandated disclosures to employees, and posting a publicly-available retention policy related to biometric data. (*See* Agreement § 2.2.) The Settlement also requires SHL to destroy all handprint data collected from former employees. (*Id.*) This prospective relief fits squarely within BIPA's statutory goals and the goals of this lawsuit.

### 2. The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval.

"As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment.

The Settlement here meets both the 23(e)(2)(C) requirements and the Seventh Circuit's first and second factors because it provides immediate relief to the Settlement Class while avoiding potentially years of litigation and appeals, with both Plaintiff and Defendant believing that they have strong cases for their side. *See Schulte I*, 805 F. Supp. 2d at 586 ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued

litigation."). Here, continued litigation would have caused great delay and expense, without any guarantee of a recovery for the Class. The Settlement allows the Class to avoid that risk, and this factor thus strongly weighs in favor of approval.

Defendant had several defenses and arguments it intended to raise to defeat Plaintiff's and the Class's claims to relief. First, Defendant would continue to assert that Plaintiff's BIPA claims are preempted by the IWCA, 820 ILCS 305/1, *et seq.* (Dkt. 41, Def.'s Am. Ans., at Aff. Def. 6.) Although the Illinois Appellate Court rejected this argument in *McDonald v. Symphony Bronzeville Park LLC*, 2020 IL App (1st) 192398, the issue is now before the Illinois Supreme Court after it accepted Symphony's petition for leave to appeal. *McDonald v. Symphony Bronzeville Park, LLC*, 163 N.E.3d 746 (Ill. 2021). Defendant would also continue to assert that a majority of the class's claims are time-barred. (Dkt. 41, at Aff. Def. 3.) The Illinois Appellate Court is set to decide appeals in *Tims v. Black Horse Carriers, Inc.*, No. 1-20-0563 (1st Dist.) and *Marion v. Ring Container Technologies, LLC*, No. 3-20-0184 (3d Dist.), to clarify the applicable limitations period for BIPA claims: *Tims* will decide whether a one- or five-year limitations period applies, and *Marion* will additionally consider whether a two-year period applies. Although a one- or two- year limitations period wouldn't affect Plaintiff's claims—as she worked for SHL until October 2018 and filed this case in February 2019—it would affect a large number of class member claims. (*See* Prelim. Approval Order ¶ 3 (certifying Settlement Class of all individuals who used biometric scanners between February 28, 2014 and January 12, 2021).) Defendant was also expected to argue—like nearly every other BIPA defendant—that the handprint data collected by its timeclocks was neither "biometric identifiers" nor "biometric information" covered by BIPA. (*See* dkt. 41, ¶ 2.) Plaintiff intended to defeat these arguments at summary judgment and/or trial, and is confident she could have done so, but the Settlement

provides excellent relief to the Class without the delay necessitated by briefing and a trial on these questions, and without the inherent risk of presenting such matters to a jury.

Plaintiff would also be required to use significant resources to litigate the issue of class certification. The Advisory Committee notes to amended Rule 23(e) suggest that courts should consider the likelihood of certifying a class for litigation in evaluating this sub-factor because the issue of litigating class certification is a salient one. While Plaintiff believes that she would ultimately prevail on certification issues given Defendant's uniform conduct, class certification is still a significant hurdle and presents a risk to any class recovery. Were adversarial class certification to be granted, the possibility of an interlocutory appeal would still risk causing significant delay to any recovery. *Cf. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (affirming class certification on interlocutory appeal in BIPA case filed four years earlier),

Even if Plaintiff had succeeded at summary judgment and/or trial, Plaintiff recognizes that Defendant would have the ability to appeal the merits of any adverse decision on the myriad issues of first impression posed by BIPA cases. Ultimately, failure at any one of these points could strip Plaintiff and the Class of most or all recovery, making further litigation a risky endeavor. While Plaintiff does not believe that any of the arguments above are viable, she recognizes that, to her knowledge, no BIPA case has ever been tried. This Settlement factors in that uncertainty, as well as the delays that would necessarily accompany briefing the arguments before this Court and the Seventh Circuit.

Finally, there is no guarantee that the Settlement Class would receive any benefit from protracted litigation. Protracted litigation is costly and time consuming, and it is possible that it "would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now . . ." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.

Supp. at 964. This Settlement provides immediate and guaranteed relief to Settlement Class Members, without the risk of protracted litigation. Thus, given the substantial risks, expense, and delay that would accompany further litigation, and in comparison to other BIPA class action settlements, the Settlement offers substantial value relative to the strength of Plaintiff's case. The most important factor therefore strongly supports final approval.

   ***3.  The Method of Distributing Relief to the Settlement Class Members is Effective and Supports Final Approval.***

   The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." William B. Rubenstein, 4 *Newberg on Class Actions* § 13:53. This Settlement is one of the few privacy settlements to provide relief directly to Class Members without the need to submit a claim form, meaning every Settlement Class Member for whom a deliverable address is available will receive payment. Of course, settlements that establish a fund and require a claim form are not necessarily bad. They're the norm because, in most cases, defendants simply don't have enough information about class members to avoid it. But here, Settlement Class Members either still work for Defendant or did so in the past five years, so direct contact information is readily available. Avoiding the claims process ensures that every Settlement Class Member possible will get paid, and that less of the Settlement Fund will be spent on administrative overhead. It is an enormous benefit to the class and fully satisfies this consideration under Rule 23(e)(2)(C)(ii).

#### 4.    *The Terms of the Requested Attorneys' Fees are Reasonable.*

The third and final relevant sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii).

Class Counsel petitioned the Court for an award of reasonable attorneys' fees after the Settlement Class received notice of the Settlement. (Dkt. 62.) The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method) and its limit on attorneys' fees (i.e., no more than 35% of the non-reversionary Settlement Fund) are reasonable and predicated on the outstanding relief provided to the Settlement Class. To be sure, the percentage-of-the-fund method has been used to determine a reasonable fee award in every BIPA class action settlement creating a common fund to date, and a 35% award falls comfortably within the range of typical fee awards in these cases. *See*, *e.g.*, *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 18-cv-7018, dkt. 57 (N.D. Ill) (awarding 35% of the fund); *Sharrieff v. Raymond Mgmt. Co., Inc.*, No. 2018-CH-01496 (Cir. Ct. Cook Cnty. Aug. 1, 2019) (awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, No. 2018-CH-02140 (Cir. Ct. Cook Cnty. Dec. 5, 2018) (same) *Svagdis v. Alro Steel Corp.*, No. 2017-CH-12566 (Cir. Ct. Cook Cnty. Jan. 14, 2019) (same); *see also Newberg on Class Actions* § 15:83 (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). Accordingly, that the Settlement permits the Court to award 35% of the fund in attorneys' fees is more than appropriate. Finally, if approved, the Settlement provides that attorneys' fees will be paid within six business days after final judgment, including any appeals. (Agreement §§ 1.10, 8.2.) These terms are reasonable and should be approved.

21

### E. The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement.

In addition to the requirements that overlap with those now required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the opinion of competent counsel, and whether the settlement raises any red flags that courts should be wary of. *Wong*, 773 F.3d at 863. Here, the positive reaction of the Class, the support of counsel, and the lack of red flags all favor approval.

### 1. The Reaction of the Class Favors Approval.

Lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *6. Here, the Court-approved Settlement Administrator diligently implemented the Notice Plan, and the objection and exclusion deadlines have passed without a single person objecting to the Settlement or opting out of participating. That not one person has objected to or requested to be excluded from the Settlement is powerful evidence of the Class's support for the Settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'") (citations omitted); *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (stating that "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate"). This factor thus strongly supports granting final approval to the Settlement.

### 2. Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval.

The opinion of competent counsel also supports final approval of the Settlement. Where class counsel has "extensive experience in consumer class actions and complex litigation[,]"

their "belie[f] that the settlement is beneficial to the Class" supports approval of the settlement. *Schulte I*, 805 F. Supp. 2d at 586; *see also Retsky Family Ltd. P'ship*, 2001 WL 1568856, at *3 (finding plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted").

First, Class Counsel are competent to give their opinion on this Settlement. Edelson PC is a national leader in high stakes' plaintiffs' work, including class actions, as well as mass actions and public client investigations and prosecutions. The firm filed the first-ever class action under BIPA against Facebook, *Licata v. Facebook, Inc.*, 2015-CH-05427 (Cir. Ct. Cook Cnty. Apr. 1, 2015), secured the first-ever adversarially-certified BIPA class in that case and defended the ruling in the Ninth Circuit, *Patel v. Facebook, Inc.*, 932 F.3d at 1277 (upholding adversarial BIPA class certification), *cert. denied Facebook, Inc. v. Patel*, 140 S. Ct. 937 (2020), and recently obtained final approval of a settlement agreement with Facebook to resolve the case for $650 million. *In re Facebook Biometric Info. Privacy Litig.*, No. 15-CV-03747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021) (granting final settlement approval).

The firm has also achieved many of the seminal appellate rulings on the matters of first impression under BIPA. *See Patel*, 932 F.3d 1264 (9th Cir. 2019) (defending class certification and standing on appeal); *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175 (holding, pre-*Rosenbach*, that a person did not need to plead additional harm to be "aggrieved" within the meaning of BIPA's damages provision); *Rottner v. Palm Beach Tan, Inc.*, 2019 IL App (1st) 180691-U (holding that a violation of BIPA is sufficient to claim liquidated damages); *McDonald*, 2020 IL App (1st) 192398 (holding that the exclusivity provisions of the IWCA do

23

not bar employee BIPA claims against employers). Thus, they are more than competent to provide their opinion on the strength of the Settlement.

Put simply, and for the reasons discussed in detail above, Class Counsel believe that the Settlement provides outstanding monetary and prospective relief without the uncertainty and delay that years of litigation would bring. (Ufkes Decl. ¶ 6.) That is certainly in the best interest of the Settlement Class. (*Id.*)

For these reasons, the opinion of Class Counsel weighs in favor of final approval.

### 3. *The Settlement Raises No Red Flags.*

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in analyzing class settlements. In *Eubank v. Pella Corp.*, the Seventh Circuit identified "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for[.]" 753 F.3d 718, 728 (7th Cir. 2014). Those signs included (i) a single class containing two adverse subgroups, (ii) a family relationship between class counsel and the class representative, (iii) failure to establish the amount of class member recovery, (iv) the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees before notice of the settlement was provided to class members, (vi) a provision in the settlement agreement denying incentive awards to class representatives who objected to the settlement, (vii) providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id.* at 721-28.

Here, none of those red flags are present. There are no subgroups to this class and the Class Representative, Ms. Lopez-McNear, has no familial relationship with Class Counsel or any member of their respective law firms. Any unawarded attorneys' fees will be distributed to Settlement Class Members, not revert to SHL (Agreement § 8.1); there has been no advance of

attorneys' fees to Class Counsel; and there is no provision in the Settlement Agreement denying an incentive award to a named plaintiff who does not support the Settlement.

The Settlement here is beneficial to Settlement Class Members and displays no warning signs that should give this Court pause. The Settlement should therefore be approved.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order finally approving the Parties' Settlement and ordering such other relief as this Court deems reasonable and just.[7]

<div style="margin-left:40%">

Respectfully submitted,

**SONIA LOPEZ-MCNEAR**, individually and on behalf of the Settlement Class,

</div>

Dated: April 13, 2021

<div style="margin-left:40%">

By: /s/Schuyler Ufkes
   *One of Plaintiff's attorneys*

Jay Edelson
jedelson@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

David J. Fish
dfish@thefishlawfirm.com
THE FISH LAW FIRM
200 East 5th Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590

*Settlement Class Counsel*

</div>

---

[7]    For the Court's convenience, Plaintiff will submit a proposed final approval order to the Court's designated email address prior to the April 27, 2021 final approval hearing.